## ALSTON *v.* FORSYTHE

[No. 310, September Term, 1960.]

*Decided July 7, 1961.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Herbert J. Hirsch,* with whom was *Manuel E. Lefko* on the brief, for the appellant.

*Frederick J. Green, Jr.,* with whom were *Lord, Whip, Coughlan* and *Green* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff-appellant, Alston, appeals from a judgment, entered upon the verdict of a jury, in favor of the defendant-appellee, Forsythe, in a suit for personal injuries sustained by Alston in an accident in which Alston, a pedestrian, was struck by an automobile owned and operated by Forsythe.

The accident happened after dark, but under lighting conditions described as good, at about 7:25 P.M. on November 8, 1958. The defendant was driving his car south on Broadway, in Baltimore, between Hoffman and Ellsworth Streets. Between these streets a railroad crosses Broadway at right angles by two parallel overhead bridges. Broadway is a divided highway—a boulevard street—with sidewalks along its eastern and western sides, and with north and southbound traffic lanes each 25 feet wide. These are separated north and south of the railroad bridges by grass plots 45 feet in width, having curbs on each side, and under the bridges by large stanchions, six to a side, so placed that one row forms a continuation of the east, and the other of the west, curb line of the median grass plots. The space under these bridges and between the stanchions is paved. Just before the accident the defendant was driving in the left of the southbound lane, about two feet from the line formed by the western grass plot curbs and the western row of stanchions.

There was evidence to show that another car was proceeding south on Broadway in the right hand lane ten to twenty feet ahead of the defendant, that the plaintiff was crossing Broadway from west to east; that the car ahead of the de-

fendant avoided hitting the plaintiff when the driver applied his brakes hard; that the plaintiff continued to cross, and that as he passed in front of the other car he emerged into the view of the defendant not more than about forty-five feet in front of his car; that the plaintiff was struck by the defendant's car when he had almost reached the east side of the southbound lane; that the defendant applied his brakes and laid down skid or tire marks for a net distance of forty-two feet (after allowing for the ten-foot wheelbase of the car); that the skid marks stopped just south of the southern railroad bridge; that the plaintiff fell at a point alongside the southernmost of the western row of stanchions supporting the railroad bridges; and that the plaintiff was picked up from this point by an ambulance crew and taken to a hospital. The plaintiff claimed that he fell on a grassplot, but even he testified, as did other witnesses, that he had not been moved after the accident until the ambulance arrived, and the testimony of every other witness on this subject, including that of the police officer who saw him being removed, was that he was lying by the stanchion. As is shown by a surveyor's plat this stanchion is 130 feet north of Ellsworth Street [where the plaintiff says the accident happened], and is almost as far south of Hoffman, and it is about 25 feet from the nearest grassplot.

Within a few minutes after the accident the defendant gave a statement to an investigating police officer in which he stated that his speed had been about 35 miles an hour, that he had first seen the plaintiff when he (the defendant) was about at the second post of the bridge [presumably the middle stanchion under the first or northerly bridge], that "I tried to hit my brakes when I saw him," that when the defendant first saw the plaintiff the latter appeared to be going east across Broadway, but that "it seemed like he didn't want to move when I hit the brakes," and that his left front fender struck the plaintiff and threw him against one of the bridge stanchions. The defendant also stated that he "had a couple of beers that is all." The officer's report noted that "he smelled slightly of beer or whiskey." At the trial the defendant claimed

that his speed had been about 25 miles an hour and that his statement to the officer as to speed had been due to his being excited. He confirmed his statement about having had two glasses of beer, and no more, and stated that he had drunk them between about 5 and 6 P.M., which would be between about an hour and a half and two hours and a half before the accident.

The investigating officer also visited the plaintiff at the hospital that evening and noted in his report that the plaintiff then "smelled strongly of beer or whiskey," though he denied having been drinking.

There was no evidence that the defendant showed visible signs of his faculties being in any way impaired immediately after the accident, and there seems to be no question about his car having proper lights on.

The speed limit on Broadway in the vicinity of the accident was stipulated to have been 30 miles an hour. "Stopping distances" (allowing for reaction time and braking) were stipulated for speeds of 25, 30, 35, and 40 miles an hour as 61, 83, 109, and 137 feet, respectively.

The principal controversy with regard to the facts was whether the accident happened at the intersection of Ellsworth Street and Broadway, as the plaintiff contended, or between intersections,[1] under the railroad bridge, as the defendant contended. That question was squarely and, we think, fairly presented to the jury.

The appellant's first contention is that the trial court's summary of the evidence was biased against him. He claims that the court ignored testimony favorable to him and stressed testimony favorable to the defendant. The exceptions to the charge on the ground of bias were rather general, and as to

---

1. There is an alley twenty feet wide running west from Broadway just south of the railroad embankment which abuts the western end of the bridges carrying the railroad over Broadway. Neither party contends that this alley figured in the accident at all. The defendant places the point of impact about 45 to 50 feet north of the north side of this alley, and the plaintiff places it about 70 feet south of the south side.

one matter (pointed out below) rather clearly insufficient. Cf. *Maszczenski v. Myers,* 212 Md. 346, 356, 129 A. 2d 109. However, even if we treat them as sufficient, we are satisfied from a review of the evidence and of the court's entire charge that these claims are without any substantial foundation or merit.

With regard to the place where the accident happened, there was little, if indeed any, evidence favorable to the plaintiff other than his own testimony, either to emphasize or ignore. His own testimony was called to the jury's attention, as was other evidence to the contrary. The question was directly and, we think, properly submitted to the jury for determination. It seems to us incredible that the plaintiff could have been struck by a southbound car and could have been thrown to a point 130 feet north of the place at which he said he was struck; yet the trial court did not overemphasize the high improbability of the plaintiff's claim as to where the accident happened. The court certainly had no obligation to try to conceal it or to cover it up by omitting all reference to testimony contrary to the plaintiff's unsupported assertion.

Other matters complained of as to bias scarcely merit comment. Weaknesses or inconsistencies in the testimony of a passerby eyewitness were adquately brought to the jury's attention. The defendant's inconsistent statements as to speed were pointed out, and the court also referred to the defendant's effort to explain his statement to the police made just after the accident. With regard to alleged inconsistency in the defendant's statements about applying his brakes, we do not find any, and think the court's summary dealing with that matter was quite in order. As regards skidmarks we find no adequate exception on this point. Even if there had been one, we should see nothing to cast doubt upon testimony that the skidmarks ending near the stanchion where the plaintiff lay after the accident were made by the defendant's car. As to this matter, the court seems merely to have assumed the truth of uncontradicted evidence, which was in no way improbable. The omission of any reference to the fact that the defendant stated that he had drunk two glasses of beer between an

hour and a half and two and a half hours before the accident or to the fact that the police officer noted that the defendant smelled slightly of beer or whiskey, insofar as bias is concerned, is fully offset by the absence of any reference to the same police officer's report that the plaintiff smelled strongly of beer or whiskey.

The court's references to the facts were, we think, within the established rule that the trial judge "may call the attention of the jury to the parts of * * * [the evidence] which he thinks important, and he may express his opinion upon the facts, provided that he makes it clear to the jury that all matters of fact are submitted for their determination." *Snyder v. Cearfoss,* 190 Md. 151, 161, 57 A. 2d 786, substantially quoted in *Reindollar v. Kaiser,* 195 Md. 314, 319, 73 A. 2d 493; Md. Rule 554 b 2. Here the requisite instructions stated in the rule and in the proviso just quoted were given. *Mezzanotte Construction Co. v. Gibons,* 219 Md. 178, 148 A. 2d 399. And see *Coby v. State,* 225 Md. 293, 297, 170 A. 2d 199, a criminal case in which it was held unnecessary for the court to comment on all of the evidence. Whether or not there was any need to give any instructions based upon alleged driving while under the influence of intoxicating liquor is considered below.

In addition to making a general charge of bias, the appellant also complains of the court's charge in certain other respects.

First, he sought a binding instruction (Prayer A) that the defendant was guilty of negligence and that the only question for the jury to determine was whether or not the plaintiff was guilty of contributory negligence. He also sought a somewhat more specific instruction (Prayer B) that the defendant was guilty of negligence as a matter of law because of the "uncontradicted" evidence that the defendant was exceeding the speed limit and was driving while under the influence of intoxicating liquor. Both of these instructions were properly rejected, as was another (Prayer 7) dealing with the latter subject. Exceptions to the charge raising the same or similar contentions were also properly overruled.

Exceeding the speed limit does not constitute actionable negligence unless it is a proximate cause of injury or damage. *Sun Cab Co., Inc. v. Cusick,* 209 Md. 354, 121 A. 2d 188; *Mason v. Triplett,* 217 Md. 433, 141 A. 2d 708. As was said by Judge Prescott, speaking for this Court, in *Ford v. Bradford,* 213 Md. 534, 541, 132 A. 2d 488: "the violation of a statutory regulation is evidence of negligence, and if such violation causes or contributes to the injuries complained of it constitutes negligence," that is, actionable negligence for which the defendant may be held liable. See also *Richardson v. Boato,* 207 Md. 301, 114 A. 2d 49, and other cases cited in 3 M. L. E., *Automobiles,* § 161. Whether the defendant was exceeding the speed limit of thirty miles an hour and, if so, whether his doing so contributed to the happening of the accident were questions that were submitted to the jury under instructions which correctly stated the law in accordance with the rules which we have restated above. On the evidence above summarized, a binding instruction to the effect that the defendant was guilty of negligence because of his exceeding the speed limit was properly refused. Under the stipulated "stopping distances," the defendant could not have stopped soon enough after seeing the plaintiff 45 feet ahead of his car to avoid striking him if the defendant was driving at either 25 or 30 miles an hour, each of those speeds being within the speed limit. Since the instructions pertaining to speed which were actually given were proper and covered the subject adequately, there was no error in rejecting the plaintiff's sixth prayer, even if we assume (without deciding) that an exception to its being refused was properly preserved. Rule 554 b 1; *Dorough v. Lockman,* 224 Md. 168, 167 A. 2d 129; *Feinglos v. Weiner,* 181 Md. 38, 28 A. 2d 577.

The trial court did not grant any instruction based upon the plaintiff's contention that the defendant was driving while under the influence of intoxicating liquor in contravention of § 206 of Art. 66½ of the Code (1957), referred to below, for brevity, simply as § 206. In support of his contentions on this subject the appellant cites *Singleton v. Roman,* 195 Md. 241, 72 A. 2d 705, and the earlier case of *Cumberland &*

*Westernport Transit Co. v. Metz,* 158 Md. 424, 149 A. 4, cited and relied upon in the *Singleton* case.

Neither *Singleton* nor *Cumberland & Westernport Transit Co.* supports the plaintiff's claim that he was entitled to a binding instruction that the defendant was guilty of negligence because of driving while under the influence of intoxicating liquor. In each of those cases the matter of a defendant's drinking was held to be a factor for consideration by the jury in determining negligence. In the *Cumberland & Westernport Transit Co.* case, the alleged intoxication of the driver of an oil truck involved in the accident was to be considered by the jury in determining "whether, and to what extent, his intoxication, if any, contributed to the plaintiff's injuries * * *." (158 Md. 451.) This is in accord with the rule stated in considering the matter of speed, that the violation of a statute constitutes evidence of negligence, but does not constitute actionable negligence unless it is a proximate cause of injury or damage. We find nothing in *Singleton* suggesting a different view.

With regard to whether or not the plaintiff was entitled to an instruction based upon § 206, the plaintiff's requested instructions were properly rejected, for one reason (quite apart from any infirmities under Md. Rule 554 d and *Belt's Wharf Warehouses, Inc. v. International Products Corp.,* 213 Md. 585, 132 A. 2d 588), because they ignored the matter of any causal relation between the alleged driving while under the influence of intoxicating liquor and the happening of the accident.

The exception based upon the court's omission from the charge of any reference to the defendant's having admitted that he had had some beer prior to the accident is not well taken. Its exact purport is not wholly clear to us. We have already considered the matter from the point of view of alleged bias, and will say no more about that. Even if we treat this exception, either along with or without the exceptions to the denial of Prayers B and 7, as sufficient to present a claim that the jury should have been instructed in substance that if the defendant was driving while under the influence of

intoxicating liquor in violation of § 206, and if this violation caused or contributed to the happening of the accident, this would constitute negligence on the part of the defendant, we think that such an instruction was properly refused, because the evidence was not sufficient to warrant it. *Dorough v. Lockman, supra; West v. Belle Isle Cab Co.,* 203 Md. 244, 254, 100 A. 2d 17.

There was no evidence to show that the defendant was driving his automobile while in a condition produced by "drinking to the extent of probably affecting one's judgment and discretion or probably affecting one's nervous system to the extent that there is a failure of normal coordination, although not amounting to intoxication." (*Clay v. State,* 211 Md. 577, 584, 128 A. 2d 634, a case of manslaughter by automobile.) For similar definitions of "under the influence of intoxicating liquor," see *Chemical Tests for Alcoholism,* 14 Md. L. Rev. 111, at 139, "significant impairment of one's own ability to operate a motor vehicle," and *Shanahan v. State,* 162 Neb. 676, 77 N. W. 2d 234, 237, lost to an appreciable degree the "normal control of his bodily and mental faculties;" and *State v. Blankenship,* 229 N. C. 589, 50 S. E. 2d 724. In the instant case there was nothing in the operation of the defendant's car, so far as the record discloses, or in his actions or demeanor after the accident happened to suggest that he was under the influence of intoxicating liquor within the meaning of the definitions above quoted. See *Thomas v. State,* 206 Md. 49, 109 A. 2d 909, another manslaughter by automobile case, where the consumption of six bottles of beer in a period of about five and one-half hours before the accident (two of them shortly before it) was held insufficient to establish that the defendant was under the influence of intoxicating liquor where there was evidence showing careful driving a few minutes before the accident and no charge of violation of § 206 was placed at the time of the accident.

In the *Thomas* case, as here, no chemical test was made to determine the percentage of alcohol in the defendant's blood. Here, too, there is no showing of any charge of a violation of § 206 made at the time of the accident. The only evidence

to suggest that the defendant was under the influence of intoxicating liquor was that he had had "two beers" and smelled slightly of beer or whiskey. In this connection we may note that on the basis of tests referred to by Louis P. Gundry in the symposium on *Chemical Tests for Intoxication,* above referred to, 14 Md. L. Rev. at p. 118, it would appear quite improbable that two bottles of beer would produce as much as .04%, an average result produced by drinking three or four bottles in rather quick succession about an hour and a half before a test. Under Code (1960 Cum. Supp.), Art. 35, § 100 (added by Ch. 769 of the Acts of 1959), under which the result of a chemical test of the amount of alcohol in the blood of a defendant prosecuted under Sec. 206 of Art. 66½ of the Code is admissible in evidence (subject to certain conditions), if the percentage of alcohol in the blood is .05% or less, "it shall be presumed that the defendant was not under the influence of intoxicating liquor", though this presumption is not conclusive. If the percentage is more than .05%, but less than .15%, such fact gives rise to no presumption that the defendant either is or is not under the influence of intoxicating liquor. Since this statute deals with a matter of evidence, we think that it may properly be considered in reviewing a case tried after its enactment, even though the accident here involved occurred prior thereto. See *State v. Norwood,* 12 Md. 195; *Southerland v. Norris,* 74 Md. 326, 22 A. 137; *Beechwood Coal Co. v. Lucas,* 215 Md. 248, 137 A. 2d 680; *Richardson v. Richardson,* 217 Md. 316, 321, 142 A. 2d 550.

We also note that what is now § 206 of Art. 66½ of the Code (1957), which makes it an offense "for any person who is * * * under the influence of intoxicating liquor * * * to drive * * * any vehicle * * * within this State" differs from the earlier wording of this statute, which was applicable in *Cumberland & Westernport Transit Co. v. Metz, supra* (1930). The statute there involved (then Code (1924), Art. 56, § 197, derived from the Acts of 1910, Ch. 207, sec. 140 (e)), made it a misdemeanor to drive an automobile when *"intoxicated or at all* under the influence of intoxicating liquor." (Italics

supplied.) The italicized words were eliminated by Ch. 1007 of the Acts of 1943, Sec. 153. (Ch. 1007 of the Acts of 1943 was a general revision of the Motor Vehicle Law, which was then established as Art. 66½ of the Code.) This change had actually been made prior to *Singleton v. Roman,* 195 Md. 241, 72 A. 2d 705 (1950), but it was not referred to in the opinion in that case. We think that the meaning of the present statute is correctly stated in the quotation from the *Clay* case above set forth, and that this meaning is compatible with § 100 of Art. 35, *supra,* enacted since the decision in the *Clay* case. The *Thomas* case implicitly also took a like view of the present statute.

We find no error in the court's not referring in the charge to the defendant's having had some beer in the amount and at the time shown by the evidence or in omitting any instruction based upon the effect of driving while under the influence of intoxicating liquor.

The appellant also claims that the instructions were erroneous with regard to the plaintiff's contributory negligence based upon his stepping or walking out in front of the defendant's car and the relative rights of way of the parties. The objection that there was no evidence that the plaintiff stepped or walked in front of the defendant's car because he had almost completed his passage across the street, is devoid of merit. There was clear evidence that he stepped or walked out from a point at which he had been hidden from the defendant by the automobile in front and to the right of the defendant that had just avoided hitting the plaintiff.

The objection that this instruction made no differentiation between an accident happening at a street intersection and one occurring between intersections is also not well founded. If the instructions as a whole had given the impression that it made no difference in any aspect of the case whether the accident happened at an intersection or between intersections, the situation would be different. That, however, the instructions did not do. They made it very clear that the relative rights of way of the pedestrian and of the motorist were quite different, depending upon the place where the accident happened.

They correctly stated that at intersections the pedestrian has the right of way and between intersections the motorist has it. They also made it clear that, regardless of the place of the accident, neither has an absolute right to proceed in disregard of danger to himself or to the other party. No useful purpose would be served by restating established rules as to the relative rights of way and duties of pedestrians and motorists, at or between intersections, including the duty of a motorist to maintain a proper lookout and to have his car under control. Among comparatively recent cases on the subject, see *Henderson v. Brown,* 214 Md. 463, 135 A. 2d 881, *Love v. State, Use of Nelson,* 217 Md. 290, 142 A. 2d 590, *Campbell v. Jenifer,* 222 Md. 106, 159 A. 2d 353, *Sun Cab Co. v. Cialkowski,* 217 Md. 253, 142 A. 2d 587, *Nance v. Kalkman,* 223 Md. 564, 165 A. 2d 757, *Boyd v. Simpler,* 222 Md. 126, 158 A. 2d 666.

The plaintiff sought an instruction based upon the doctrine of last clear chance. There is nothing to show that the defendant could have avoided injury to the plaintiff after he became aware of his peril, and the stipulated "stopping distances" indicate that he could not have done so. The evidence was not such as to warrant an instruction based upon that doctrine. *West v. Belle Isle Cab Co., supra; Dehn v. Matusak,* 224 Md. 14, 17, 165 A. 2d 880, and cases therein cited.

We think that there was no need for the court to read various sections of the motor vehicle law to the jury where those matters upon which an instruction was appropriate were covered by the charge. Taken as a whole, the instructions of the trial court covered the law of the case fairly and adequately. That is sufficient. See *West v. Belle Isle Cab Co., supra,* 203 Md. at 250; *Casey v. Roman Catholic Archbishop,* 217 Md. 595, 612, 143 A. 2d 627; *Lemons v. Md. Chicken Processors,* 223 Md. 362, 370, 164 A. 2d 703; *Nance v. Kalkman, supra,* 223 Md. 569-571.

*Judgment affirmed with costs.*