BRAZEROL ET UX. *v.* HUDSON ET AL.

[No. 432, September Term, 1970.]

*Decided June 1, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Howard L. Stern,* with whom were *Kahler, Shipley & O'Malley* on the brief, for appellants.

*Susan E. Pfeifer,* with whom were *Joseph Patrick Clancy* and *Richey & Clancy* on the brief, for Silver Hill Sand, Gravel and Concrete Company, part of appellees. No brief filed on behalf of other appellees.

BARNES, J., delivered the opinion of the Court.

The two questions presented to us in this case involving alleged trespass to land are (1) Did the appellants, Alfred J. Brazerol and Shelby J. Brazerol, his wife — plaintiffs below—prove a trespass to their land? and (2) Did the trial court err in allegedly finding justification for the supposed trespass when there had been no special plea filed by the appellees — defendants below — pleading justification? The Circuit Court for Prince George's County (Loveless, J.) dismissed the action upon a motion by the defendants at the end of the plaintiffs' testimony, denied a motion by the plaintiffs for a new trial and after judgment absolute against them for costs, the plaintiffs filed a timely appeal to this Court. Finding no error in the trial court's rulings, we shall affirm the judgment.

The plaintiffs Brazerol own the property 3322 Fairhill Drive in the Kay Park subdivision of Prince George's County. Their next-door neighbors are Nicholas Hudson and Phyllis Hudson, his wife, who own the property 3324 Fairhill Drive. On May 2, 1967, Mr. Hudson approached his neighbor, Mr. Brazerol, and said that the Hudsons wished to build a swimming pool on the Hudson prop-

erty but that there was not room on that property to allow a piece of equipment in the Hudson back yard to dig the hole for the pool. Mr. Hudson then requested Mr. Brazerol's permission to allow a shovel to come on the Brazerol property in order to get to the Hudson's back yard, stating that if there was any damage Mr. Hudson would take care of it. Mr. Brazerol gave the requested permission and a few days later, the shovel came onto the Brazerol property and went over to the Hudson's back yard.

On May 13, 1967, a sand and gravel dump truck, fully loaded, arrived at the Brazerol property. Mr. Hudson's son, Rodney, came to the door of the Brazerol home and stated to Mrs. Brazerol that his father wanted Mr. Brazerol to move the automobile of the Brazerols out of the driveway. Mrs. Brazerol stated that she "would be out in a few minutes to move it, and I went out to move it." Mr. Brazerol did not move the Brazerol automobile because he "was in bed asleep."

When Mrs. Brazerol drove the Brazerol car down the street and returned to her home, the dump truck was in the Brazerol yard. She did not ask the truck driver to get off the Brazerol property, either then or later. She knew that the dump truck was delivering sand to the Hudsons. After the operator of the dump truck had left, she looked out of her window and saw the sand dumped into the Brazerol yard. The sand remained there "at least a couple of weeks," after which it was "pretty much taken away."

Shortly after the dump truck had left, Mrs. Brazerol noticed a crack in the wall of the laundry room in the basement of the Brazerol home over the washing machine. While the dump truck was there, it had started to rain quite hard—"too hard to go out." She tried to call the trucking company but the telephone number had been changed and the new number was unlisted. About a week after the dump truck incident, a bulldozer came on the property. The bulldozer operator was supposed to level the yard "but he didn't." There was evidence of damage

from the settling of the cracked wall, as well as dampness and mildew.

Two expert witnesses were produced by the plaintiffs. One, a Mr. Osti, a contractor and manufacturer, estimated that the cost to correct the cracked wall and other damages would be $2,800.00. In his opinion, the wall had been "slightly pushed in" and that indicated to him that this had been done by some outside pressure. On examining the ground on the outside, one could see "there is a depressed area where a heavy vehicle has traversed on it." The other expert was a Mr. Busada, a real estate broker, appraiser, who estimated the amount of the damage resulting from the cracked wall at $3,000 using a cost approach and a market data approach.

In their amended declaration, the Brazerols filed two counts. In Count I, they alleged that on or about May 1, 1967, the Hudsons asked permission of the plaintiffs to allow a machine to go on the Brazerol property to dig a hole on the Hudson property, the Hudsons agreeing to "take responsibility for damage caused by the equipment." Relying on this assurance, the requested permission was given and the earth moving equipment came on the plaintiffs' property on May 6, 1967, and "then on to the defendants which damage has not been repaired." There was no allegation in regard to *what* damage was done; but in any event, the proof indicates that some sod, apparently disturbed by the earth moving equipment, had been replaced by the Hudsons. There was no evidence whatever to show that this earth moving equipment had caused the crack in the wall.

The Second Count, which is the important one in the case, was in trespass and alleged that on or about May 9, 1970, "without the expressed or implied permission of the plaintiffs" the Hudsons and the defendant, Du-Rite Chemical Corporation (one of the appellees), "or an agent thereof, instructed an agent of the defendant Silver Hill Sand, Gravel and Concrete Company [the remaining appellee] who was the operator of a dump truck to drive up to the driveway of the plaintiffs onto the back

yard of the plaintiffs." It is then alleged that the truck drove up the driveway "very close to the house of the plaintiffs" causing the foundation of the house to crack and "then proceeded into the yard of the plaintiffs where the truck became stuck, dropped its load of sand and damaged the yard and lawn area." The damages resulting from the entry of water and the settling of the plaintiffs' house resulting from the crack in the wall are then alleged. Damages in the amount of $25,000 compensatory damages and $40,000 punitive damages are claimed.

### (1)

The trial court, in its oral opinion, in regard to the Second Count properly stated that the evidence of the plaintiffs showed that permission had been given on behalf of the Brazerols by the actions and statements of Mrs. Brazerol to the entry of the fully loaded dump truck on the Brazerol property. See *Restatement of Torts,* § 167 (1934). Mrs. Brazerol not only saw the fully loaded truck when she moved the Brazerol car to enable the truck to enter, but when she returned to her home, she did nothing to have the dump truck removed from the property.

It thus appeared from the testimony offered by the plaintiffs that the entry upon their real property was an authorized entry and hence was no trespass. As our predecessors stated in *Patapsco Loan Co. v. Hobbs,* 129 Md. 9, 15, 98 A. 239 (1916):

> "In *Gusdorff v. Duncan,* 94 Md. 169, it is said: Every *unauthorized* entry upon the property of another is a trespass which entitles the owner to a verdict for some damages."
> (Emphasis supplied.) To the same effect, see 3 *Blackstone's Commentaries* 209 (Amer. Ed., Lewis 1922) at page 1194 and *Restatement of Torts,* §§ 158, 167.

The Brazerols, having established by their own testimony that the entry by the truck was authorized and

hence was not a trespass committed by the defendants, the trial court, upon the motion of the defendants, properly dismissed the amended declaration.

The Brazerols contend, however, that by dumping the sand on their property, the operator of the truck exceeded the authority to enter the property and, therefore, was a trespasser *ab initio,* relying upon the following statement of our predecessors in *Walsh v. Taylor,* 39 Md. 592, 599 (1874) :

> "There is no doubt of the general principle, that where a person has a special privilege or authority to enter upon the premises of another to seize goods, or do other acts, and he exceeds his authority, by doing what he was not authorized or justified in doing, he becomes a trespasser *ab initio.* All his subsequent acts are trespasses, and he is in the same position as if he was a perfect stranger, acting without any color of excuse or justification."

This statement is in accord with the law generally. *Restatement of Torts,* §§ 167, 168 (1934) and Prosser, *Torts* § 18 (3rd ed. 1964) at pgs. 104-05. See *Rager v. McCloskey,* 305 N. Y. 75, 79, 111 N.E.2d 214, 216 (1953).

If the consent to entry is conditional or limited, then the entrant must comply with the condition or limitation. *Restatement of Torts,* § 168, *supra.* If the consent to entry is unconditional and unlimited, the entrant may do that which is reasonable to accomplish the purpose of the entry, even including bringing others upon the land if their presence and assistance is reasonably necessary for the accomplishment of the purpose of the entry. *Restatement of Torts,* § 167, supra, Comment f.

In our opinion, the evidence produced by the plaintiffs indicates a general, unconditional and unlimited consent to enter. It was foreseeable that in the heavy rain a dump truck, heavily loaded with sand, might well find it necessary to dump the sand on the land of the plaintiffs to be able to get the truck from their land. When Mrs. Bra-

zerol returned to her home after moving the Brazerol car to enable the dump truck to enter, she did not at that time or at any time thereafter request the dump truck operator to remove the truck from the Brazerol's land nor did she place any condition or limitation upon its presence on the property. There is no suggestion that the *dumping of the sand* had any connection with the crack in the wall.

The evidence before the trial judge indicated a general, unconditional and unlimited consent to the truck operator to drive the truck onto the plaintiffs' land and there was no evidence that the truck operator exceeded the terms of the consent or that he was not justified in doing what he did on the plaintiffs' property. He was not a trespasser *ab initio*.

### (2)

The plaintiffs Brazerol contend that, in any event, the trial court could not find justification for the trespass because justification was not pleaded specially as required by Maryland Rule 342 c 2 and the defendants had only pleaded the general issue, *i.e.*, that they "did not commit the wrongs alleged."

Although ordinarily an objection to evidence showing excuse or justification of the alleged trespass will be sustained as inadmissible to defeat the action, under the general issue plea only, but may be admitted under that plea in mitigation of damages—see *Hamilton v. Windolf*, 36 Md. 301, 308-309 (1872)—the plaintiffs in the present case made no objection to the admission of evidence of their permission to the truck driver to drive onto their property. Indeed, the plaintiffs themselves, for the most part, produced such evidence. In any event, Rule 522 d 2 provides that:

> "Every objection to the admissibility of evidence shall be made at the time when such evidence is offered, or as soon thereafter as the objection to its admissibility shall have become apparent, otherwise the objection shall be treated as waived."

There was no motion made by the plaintiffs to strike out the testimony in regard to their permission to the truck driver. The question of its admissibility, because not specially pleaded, is consequently deemed waived and is not before us for review.

When a plaintiff alleges in his declaration in trespass that the defendants entered the property "without the express or implied permission of the plaintiffs", the question arises as to whether or not the general issue plea might sufficiently traverse the issue without the necessity of pleading justification specially. We do not find it necessary to decide this question.

*Judgment affirmed, the appellants to pay the costs.*