ELEANORE RUTH WALKER *v.* GEORGE
ROBERT HALL ET AL.

[No. 313, September Term, 1976.]

*Decided February 3, 1977.*

The cause was argued before MORTON, DAVIDSON and MOORE, JJ.

*Michael P. Crocker*, with whom was *James B. Wheatley* on the brief, for appellant.

*Richard C. Murray*, with whom were *James H. Cook* and *George E. Campbell* on the brief, for appellees George Robert Hall and Dennis George Hall.

*C. Russell Fields*, with whom were *Keyes & Simmons* on the brief, for appellee George Henry Becker.

*Robert K. Nead* for remaining appellees.

MOORE, J., delivered the opinion of the Court.

The collision of two automobiles on a clear Saturday afternoon in November, 1969, spawned three separate tort actions involving multiple parties and claims. These suits were ultimately consolidated for a trial which commenced before a jury some six years later in the Circuit Court for Baltimore County (Brannan, J.), and consumed nine days.[1]

---

1. Appellees, Dennis George Hall and George Henry Becker, were in the military service, later assigned outside the continental limits, and this accounts for a significant part of the delay.

The first party to file was Eleanore Ruth Walker, sole appellant here, then 58 years of age and the driver of a 1963 white Mercury Marauder. Her original declaration named as defendants the driver of a 1968 red Mustang, Dennis George Hall, then 18, and his father.[2] It was these two vehicles which collided at the intersection of Old Philadelphia Road (Route 7) and Pfeffers Road in Baltimore County. The accident occurred as Hall was proceeding southbound, with two passengers, and Mrs. Walker, coming from the opposite direction, driving alone, was attempting to negotiate a left-hand (west) turn into Pfeffers Road.

Young Hall and his father entered general issue pleas and filed a counterclaim in February, 1970. More than two and a half years later, Mrs. Walker obtained leave of court to file an amended declaration on the ground that Hall had been engaged in a motor vehicle race with a third car, a 1969 Dodge Challenger, operated by his friend, William Charles Martin, then 18, carrying three teenage male passengers. The new Dodge was owned by George Henry Becker, then 21. He was, however, riding with his girlfriend, Sharon Walczak, then 16, in Hall's Mustang.[3] Appellant's amended declaration, filed on November 27, 1972, named fifteen parties defendant, including Hall, Becker, Martin and the three passengers.[4] Previously, in March 1970, Becker had brought a negligence action against Mrs. Walker only, for personal injuries sustained in the accident. (Appellant thereupon filed a third party claim against Dennis Hall and his father.) In June, 1970, Sharon Walczak had filed a similar action against the Halls and Mrs. Walker.

---

2. The father was in due course directed out, there being no evidence of an agency relationship.

3. Becker apparently opted for the relative seclusion of Hall's car, relinquishing his own vehicle to Martin and the three other young men.

4. The names of the passengers, who are also appellees, are: Schuler, DeNicolis and Kadlec. The parents of certain of the defendants were also named. Becker's girlfried, Miss Walczak, was not included as a defendant. A demurrer to the amended declaration was sustained with leave to amend by order of Judge Kenneth C. Proctor on the ground, among others, that allegations of willfulness on the part of Martin's passengers or of encouragement and assistance in the alleged car racing were necessary. A second amended declaration was filed on September 27, 1973 against the same individuals.

When the three consolidated actions [5] finally came on for trial, Mrs. Walker's proof consisted of over sixty exhibits, her own testimony and that of her daughter, who resided two and a half miles from the place of the collision. In addition, appellant's counsel read into evidence major portions of depositions taken in 1972 and 1973 of four of the appellees and of a witness, Claude F. Kilgore, a resident of Virginia, who previously resided on Old Philadelphia Road near Pfeffers Road at the time of the accident, as well as answers by Martin's passengers to interrogatories propounded by appellant. The trial court, at the close of plaintiff's case, granted directed verdicts in favor of Martin and his passengers. A verdict was also directed in favor of Becker at the close of all the evidence. There remained for determination by the jury Mrs. Walker's suit against Hall and the latter's counterclaim, Becker's suit against appellant, in which Hall had been impleaded, and Miss Walczak's action against appellant and Hall.

The appellees presented the live testimony of Dennis Hall, George Becker and Sharon Walczak. In addition, the investigating officer, Trooper Thomas Myrick, and one Calvin Leary were called. (The latter, a member of the Baltimore County Fire Department, gave testimony contradictory of critical aspects of the deposition of appellant's witness, Kilgore.)

With the concurrence of counsel for all parties, the respective cases were submitted to the jury by the trial court upon specific issues, the form of the verdict being in part as follows:

> "1. Was Eleanore Walker negligent and, if so, was that negligence a proximate cause of the accident?
>
> Yes_____.     No_____

---

5. Appellees' motion to consolidate was granted by order of Judge Proctor on February 8, 1972.

2. Was Dennis Hall negligent and, if so, was that negligence a proximate cause of the accident?

Yes_____    No_____

3. Was George Becker guilty of any negligence which was the proximate cause of his injuries?

Yes_____    No_____

4. Was Sharon Walczak guilty of any negligence which was the proximate cause of her injuries?

Yes_____    No_____."

(Three additional questions were also submitted to the jury relating to money damages.) The jury found negligence on the part of the appellant and no negligence on the part of Dennis Hall, George Becker or Sharon Walczak. Damages against appellant were awarded in favor of the appellees as follows: Becker $100, Walczak $2,500,[6] Hall $2080.

In support of her appeal, appellant has put forth some fourteen assignments of error with respect to the trial court's rulings and instructions and the denial of her motion for a new trial. Particular emphasis is placed upon alleged error in the ruling by the trial court that the evidence on the issue of the existence or not of a motor vehicle race was insufficient. On this central question, as well as on subsidiary issues properly before us, we find no error. Relevant facts are stated below in our consideration of appellant's contentions.

## I  *The Alleged Motor Vehicle Race*

The six youths and the 16 year old young lady involved in this case were all residents of Rosedale in Baltimore County. They were schoolmates, social friends and one or two were related. Some time around noon on the date of the accident, November 29, 1969, they met at the Village Sub Shop in Rosedale. There they decided to drive to Singer Run Park in

---

6. Sharon Walczak was awarded $1,500 for her personal injuries and her father, Joseph Walczak, special damages of $1,000.

Harford County, where appellee, William Charles Martin, intended to conduct a search for his wallet which had been lost or stolen in the Park the day before. As previously stated, Becker and his girlfriend, Sharon Walczak, rode with Dennis Hall in the latter's Mustang, while Becker gave his keys to Martin to drive his new Dodge to the Park with the three other boys. Prior to leaving, Becker placed a six-pack of beer in Hall's car. The group remained at Singer Run Park for one or two hours. Hall, according to his deposition, consumed two beers during that time. (Becker stated in his deposition that he had had two beers in Rosedale before they left.)

Becker's rust-orange Dodge Challenger, with Martin at the wheel, accompanied by the three passengers, departed from Singer Run Park ahead of the Hall vehicle. The two groups were returning to Rosedale with no special plans for the balance of the afternoon and evening except that they did intend to get together again. A two or three mile unpaved road called Winter Run Road led from the Park area to Route 7. Hall and Martin agreed in their testimony that each was able to see the other while they were traversing this road and, for a time, after the cars turned right onto Route 7, heading south to Rosedale. Route 7, also known as Old Philadelphia Road, is a two-lane, undulating highway. Martin testified in his deposition, read at trial, that after he and his companions passed the intersection with Pfeffers Road, someone noticed that Hall's Mustang was no longer in back of them. Martin pulled off the road for a few minutes but then proceeded back to Rosedale on Route 7, surmising that Hall was returning by another route. Becker and his date, Sharon, testified at the trial that they were reading magazines during the trip back with Hall and were not attentive to the car ahead.

Appellant's witness, Claude Kilgore, stated in his deposition that at approximately 3:00 p.m. on the day in question, he was at his mailbox near the shoulder of Route 7, having walked there from his residence located approximately 100 feet from Route 7, just north of its intersection with Pfeffers Road. He stated that while there

he observed, in a period of about 20 seconds, three cars proceeding southbound. He said that the first car was going about 70 m.p.h. This was followed by a slow-moving, light colored vehicle which he thought was one of the smaller Fords. Immediately behind the second vehicle, according to Kilgore, there came a red Mustang "also going at such a high rate of speed that automatically I took it for granted that he was racing with car number one." He estimated the Mustang's speed as about the same as that of the first vehicle. He also stated that the red Mustang moved over the solid yellow line dividing the northbound and southbound lane, passing the slow-moving vehicle and then proceeded back into its own lane. He observed the back of the Mustang until it left his sight at the crest of a hill just before the intersection of Pfeffers Road. After it disappeared over the crest, he heard the collision and observed smoke.

The investigating police officer, Trooper Myrick, testified that the Mustang left 109 feet of skidmarks and its front hood left the vehicle upon impact, traveling a distance of 75 feet and striking a house on the west side of Route 7. The trooper testified that Dennis Hall "appeared to have an odor of an alcoholic beverage", which he noted on his report, but it was not sufficient to sustain a charge of driving while impaired.

On the subject of speed, Hall and Martin maintained that they kept generally within the 40 mile limit posted for Route 7. Appellees also offered the testimony of Calvin Leary, the Baltimore County fireman who was going southbound on Route 7 after working a part-time job in Harford County. Leary came upon the accident scene within minutes after the occurrence. He was driving a 1965 white Ford Comet and testified that, while driving at approximately 40 m.p.h., he observed the red Mustang ahead of him prior to the collision. He continued to observe the Mustang as it climbed the hill toward the intersection with Pfeffers Road until it dropped from view over the crest. At no time, according to Mr. Leary, did the Mustang cross over the line to pass another car. He also testified that the Mustang appeared to be proceeding at his own rate of speed, i.e., within the speed limit.

Appellant's second amended declaration alleged that all the youthful defendants (except Sharon Walczak) were engaged in a race and that all were participants — Hall and Martin as racing drivers, the passengers by their presence and "by giving moral support, encouragement and incitement to the drivers of the respective vehicles in which they were racing."

At the time of the accident, the statutory prohibition against racing or speed contests was Maryland Code, Art. 66½, § 210 (1957, 1967 Repl. Vol.) which provided, *inter alia,* as follows:

> "Racing or speed contest; wager; causing skidding, spinning or excessive noise.
>
> "(a) In general. — No person shall operate or drive any vehicle on the public highways of this State in a race or in a speed contest, or on a bet or wager, or in any intentional improper manner so as to cause skidding, spinning of wheels, or excessive noise upon said highway. . . .
>
> "(b) Timekeeper or flagman. — No person shall participate as a timekeeper or flagman in any unauthorized race or speed contest on the public streets, roads or highways in the State of Maryland. *The race or speed contest need not be for a prize, reward or wager to come within the meaning of this section."* [7] (Emphasis added.)

The trial court, at the conclusion of the appellant's case granted a motion for a directed verdict made on behalf of Martin and his three passengers.[8] The court stated in part:

> "I have no problem with Hall driving at a high rate of speed, but it seems to me that that is not enough.

---

7. This provision has been revised and is now Art. 66 ½, § 11-1116 (1957, 1970 Repl. Vol.).

8. Appellee Becker was held into the case because appellant also sought to hold Becker liable, as hereinafter noted, not only as a participant in the race but for an alleged violation of Art. 27, § 401, which prohibits obtaining liquor for a minor. Becker's motion for a directed verdict was granted however, at the close of all the evidence.

> It seems to me the mere fact that they are friends, it seems to me the mere fact that both were exceeding the speed limit, none of these even taken together in my judgment amounts to anything other than surmise and speculation as to the existence of a race."

Appellant vigorously contends that the court erred in granting the motion and also in later specifically instructing the jury that "there was no legally sufficient evidence in this case that there was a race."

It is a well-settled rule, applicable in Maryland, that the racing of motor vehicles on a public highway is negligence. All who engage in a race are liable for injury sustained by a third person as a consequence of the race, irrespective of which racing car actually inflicted the injury or of the fact that the injured person was a passenger in one of the cars. *Haddock v. Stewart*, 232 Md. 139, 142, 192 A. 2d 105, 107 (1963). *See United Railways & Electric Co. v. Perkins*, 152 Md. 105, 136 A. 50 (1927).

In *Haddock*, the court affirmed the granting of a directed verdict, on the issue of racing, in favor of the defendant at the close of the plaintiff's case. The plaintiff-appellant was proceeding north on State Route 5 toward Waldorf in Charles County, directly behind another vehicle driven by a Lieutenant Commander Baker; each car was running at about 45 m.p.h. As the two cars proceeded around a curve, a southbound vehicle, driven by Thomas Hill, traveling in excess of the 50 m.p.h. limit, swerved out of control and struck both the Baker and Haddock cars. As a result of the accident, Baker and Hill were killed. Haddock contended that the defendant-appellee, Stewart, had engaged in a race with Hill. Stewart was behind the Hill car at the time of the accident. Stewart testified that Hill, at several points along the highway, had pulled alongside his vehicle, on the 2-lane road, and signaled him to race. Each time Hill would speed up in anticipation of Stewart's response. However, Stewart emphatically denied accepting the challenge and insisted that he kept within the 50 m.p.h. speed limit.

In an attempt to impeach Stewart, appellant's counsel

introduced a statement allegedly signed by Stewart a week after the accident, in which he admitted to traveling between 60-70 m.p.h. Also, at trial, Stewart admitted passing several cars along the route traveled by both Hill and himself. As stated by Judge Sybert, the sole question raised by the appeal was "whether there was sufficient evidence, viewed in the light most favorable to the plaintiff, that the defendant Stewart gave assistance or encouragement to the tortious conduct of the deceased, Hill, so as to have warranted the submission of the issue to the jury." 232 Md. at 142, 192 A. 2d at 107.

In affirming the trial court's action, the court adopted in part the language of the trial judge, Macgill, J:

> "All you have really is some evidence of excessive speed or speed greater than the speed limit on the part of Mr. Stewart at certain points along the highway. I notice reference was constantly made to the fact that there was no occasion unless Mr. Stewart was engaged in racing for him to pass the other cars. . . . Go out on the highway, any time you want, you see cars speeding up and going sixty to pass other cars; they're not necessarily engaging in a race. . . . There isn't any direct evidence that he [encouraged Hill to race]. It may be a suspicious matter. We can't let this matter go to the Jury to speculate. . . ." 232 Md. at 143-44, 192 A. 2d at 107-08.

In the instant case, appellant relied at trial upon an asserted tendency of teenagers to engage in racing and pointed to the presence in the Hall vehicle of a tachometer and that it was equipped with "lifters." At trial appellant also emphasized the longstanding relationship between the seven youths and placed great weight, as she does on appeal, upon the deposition testimony of Mr. Kilgore. It is our conclusion, viewing the evidence as we must in the light most favorable to the appellant, that what was presented at trial constituted at most evidence of excessive speed and perhaps reckless driving on the part of appellee Hall, the

operator of the red Mustang. (We observe, however, that the jury found no negligence on his part and, indeed, awarded him compensation for personal injuries and property damages against the appellant.) Unlike the facts in *Haddock, supra,* we do not have a situation of conceded racing on the part of one vehicle. In this case, there is no evidence of a speed contest other than Kilgore's exclamation that "automatically I took it for granted that he was racing with car number one." This statement with respect to racing was obviously a conclusory, "knee-jerk" type reaction and is not legally sufficient evidence of "challenge and response." *See Bierczynski v. Rogers,* 239 A. 2d 218 (Del. 1968); *Nelson v. Nason,* 177 N.E.2d 887 (Mass. 1961). As stated by the New York Supreme Court, Appellate Division, in *Finn v. Morgan,* 362 N.Y.S.2d 292, 298 (1974),

> "Speeding and racing are not concomitant acts, and proof of speeding alone did not prove a race. *The gist of racing is competition and the facts must support an inference of some agreement to race.*" (Emphasis added.)

In support of her argument, appellant relies on the cases of *Kres v. Maryland Automobile Insurance Fund,* 273 Md. 289, 329 A. 2d 44 (1974); *Nelson v. Nason, supra; Commonwealth v. Looser,* 156 A. 2d 905 (Pa. 1959); *Bybee v. Shanks,* 253 S.W.2d 257 (Ky. 1952). *Kres,* while it dealt with the racing question, was concerned with whether the plaintiff had presented sufficient evidence of a speed contest to state a "cause of action" to sue the Fund, within the meaning of Art. 48A, § 243 H., Md. Code (1957, 1972 Repl. Vol.), and is not apposite. In detailing the quantum of evidence needed to state a "cause of action," Judge Digges wrote, it is "not the presentation of such evidence as would meet every probative test of a *prima facie* negligence cause." 273 Md. at 292, 329 A. 2d at 46. In order to withstand a motion for directed verdict, the evidence must amount to more than a "mere scintilla of evidence, amounting to no more than surmise, possibility, or conjecture." *Brock v.*

*Sorrell,* 15 Md. App. 1, 6, 288 A. 2d 640, 643 (1972), *quoting Fowler v. Smith,* 240 Md. 240, 247, 213 A. 2d 549, 554 (1965); Md. Rules of Procedure, Rule 552. The out-of-state cases relied upon by appellant were dealt with in *Haddock,* and it is sufficient to note that in each case there was either direct evidence of participation or encouragement or an ample record to support a reasonable inference of such participation. We find no error in the trial court's rulings.

## II *Alleged Liability of Appellee Becker*

Our holding with respect to the racing issue disposes of appellant's contention that appellee Becker was not entitled to a directed verdict since he was a participant in the alleged race.

A second asserted ground of liability on the part of Becker, also lacking in substance, is that he "obtained" liquor for the minor, Dennis Hall, in violation of Maryland Code, Art. 27, § 401 (1957, 1967 Repl. Vol.).[9] The evidence upon which appellant presumably relies is Becker's own testimony that he obtained a 6-pack of beer from his mother's refrigerator that morning and placed some of it in Hall's Mustang. Appellant contends that it was "under the influence of this beer that Hall operated his car wildly and in violation of six separate motor vehicle statutes. . . ."

The foregoing statutory provision then read in pertinent part:

> "Any person who obtains any spirituous or fermented liquors from any other person licensed to sell the same for any minor or person under twenty-one years of age, knowing him to be such, to be drunk by said minor or person under twenty-one years of age, shall be deemed guilty of a misdemeanor . . . ."

In our judgment the trial court correctly found the above

---

**9.** This provision, as amended, now appears in 1976 Repl. Vol., 1976 Supplement.

statute inapplicable.[10] There was no evidence that Becker obtained the beer from a licensee for a minor as the statute provides. Furthermore, Becker's conduct in providing Hall with beer could not have been the proximate cause of the accident, even if the statute were applicable.[11] *See States v. Hatfield*, 197 Md. 249, 254-55, 78 A. 2d 754, 756-57 (1951). Beyond this, the short answer to Mrs. Walker's contention is that the jury found Hall, notwithstanding evidence of some drinking, to be without fault.

### III *Alleged Errors in the Trial Court's Charge*

a) Contributory Negligence as a Defense to "Willful and Wanton Misconduct or Reckless Disregard" of Human Life.

Appellant contends that the trial court erroneously failed to charge the jury that finding the appellant guilty of contributory negligence would not bar her recovery if the jury determined the appellees' conduct to constitute "willful and wanton misconduct or reckless disregard." *See Denny v. Seaboard Lacquer, Inc.*, 487 F. 2d 485 (4th Cir., 1971). However, the jury found by its special verdict that Hall was not guilty of any negligence. Logically, any error in failing to instruct as to "willful or wanton misconduct" is rendered harmless by the jury's determination that no simple negligence existed. *See Franceschina v. Hope*, 267 Md. 632, 645, 298 A. 2d 400, 407 (1973); *see also Havens v. Schaffer*, 217 Md. 323, 327, 142 A. 2d 824, 826 (1958).

b) Failure to Instruct on the Issue of Intoxication

The evidence at trial disclosed that Hall had consumed two beers prior to the accident and that beer cans were found by Trooper Myrick in Hall's Mustang. Appellant contends that the failure of the trial judge to instruct the

---

10. Becker contends in his brief that this point was not alleged in appellant's second amended declaration and is not properly before us. We note, however, that the evidence with respect to Becker's providing Hall with beer came in without objection. *See* Brazerol v. Hudson, 262 Md. 269, 275-76, 277 A. 2d 585, 588-89 (1971).

11. The 1974 amendment to § 401 changes the proscribed age from 21 to 18 years for beer or light wine.

jury on the provisions of Maryland Code, Art. 66 ¹/₂, § 11-902, relating to driving while "under the influence," was error.

Appellant overlooks the significance of Trooper Myrick's testimony that he smelled alcohol on Hall's breath yet concluded that "I didn't feel that he had enough to be charged with it. . . ." A similar issue was before the Court of Appeals in *Alston v. Forsythe,* 226 Md. 121, 172 A. 2d 474 (1961). In *Alston,* the court affirmed a judgment for the defendant despite the trial court's actions in not instructing the jury concerning the provisions of the predecessor section of Art. 66 ¹/₂, § 11-902, under circumstances where the defendant had admitted to drinking two beers prior to the accident. The investigating officer in *Alston,* as in the instant case, noted the defendant's drinking yet failed to charge him with a violation. The court stated:

"There was no evidence to show that the defendant was driving his automobile while in a condition produced by 'drinking to the extent of probably affecting one's judgment and discretion or probably affecting one's nervous system to the extent that there is a failure of normal coordination, although not amounting to intoxication.' " 226 Md. at 132, 172 A. 2d at 479.

While the jury was free to consider the evidence of Hall's drinking and the officer's findings, we do not consider the failure to instruct as error. As Chief Judge Brune stated in *Alston:*

"We find no error in the court's not referring in the charge to the defendant's having had some beer in the amount and at the time shown by the evidence or in omitting any instruction based upon the effect of driving while under the influence of intoxicating liquor." 226 Md. at 134, 172 A. 2d at 480.

c) Trial Court's Characterization of the Consolidated Suits as Based on Negligence

The trial judge, in his charge to the jury, characterized the consolidated actions as being premised on negligence. Appellant contends that this statement was erroneous because it failed to take into account her allegations that the appellees were guilty of "willful and wanton misconduct and reckless disregard" for human life. When this excerpted instruction is put into the context of the court's entire charge, it can be seen that the court was discussing the *three* personal injury actions, not merely the appellant's suit. It should be noted that both Becker and Walczak's claims against the appellant were indeed founded upon acts of simple negligence. While Mrs. Walker's case did involve the further allegation of "wanton and willful misconduct," this fact was expressly mentioned by the trial judge in a later instruction concerning punitive damages. In discussing Mrs. Walker's claim for exemplary damages, the court stated, "if a plaintiff is injured or damaged as a result of extraordinary or outrageous conduct, which, in your opinion, constitutes a wanton or reckless disregard for human life . . . [she] may be awarded [punitive damages] . . . ." Under these circumstances, we find appellant's claim devoid of merit.

d) Duties of a Left-Turning Vehicle

Appellant predicates error upon two of the court's instructions concerning the duties of a left-turning vehicle. The first instruction was a paraphrase of former Art. 66½, § 225B, now Art. 66½, § 11-601 (2), involving the duty of a left-turning vehicle to approach the intersection "in that portion of the right half of the roadway nearest the center line thereof and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered." The appellant expressly stated at trial that she "cut over into the left hand (eastbound) [of Pfeffers Road] to try to get out of his way." Under these circumstances, we hold that the above instruction was supported by the evidence.

Additionally, appellant asserts error in the failure of the trial judge to give a requested instruction with respect to the

obligations of a driver attempting to turn left at an intersection to observe oppositely-bound traffic and the reciprocal duties of the latter. Our review of the record establishes that the court's charge substantially covered the requested instruction and we therefore find no error. *See Whoolery v. Hagan*, 247 Md. 699, 708, 234 A. 2d 605, 610 (1967).

e)  Duties of a Vehicle Traveling Upon a Highway Controlled by a Stop-Sign

Although the appellant unequivocally stated that she had been traveling north on Route 7 for several miles prior to her attempted left-turn to Pfeffers Road, the trial judge gave an instruction concerning the duty imposed on a vehicle traveling upon a highway controlled by a stop-sign. The facts are, as disclosed by the testimony of Trooper Myrick, that Pfeffers Road is almost directly opposite Jones Road, the latter being only a few feet north, and although there is no stop-sign on Route 7, Jones Road traffic is controlled by such a sign.

Both Hall and Walczak testified that when they first observed the Walker vehicle it appeared to be "coming straight across" the roadway, *i.e.*, from Jones Road into Pfeffers Road. Additionally, Hall's deposition, read by appellant's counsel at trial, disclosed that Hall had told the officer investigating the accident, shortly after its occurrence, that Mrs. Walker's car apparently came across Route 7 from Jones Road. The appellant testified that she "didn't come out of Jones Road, as the trooper had reported in his accident report." On the basis of this conflicting testimony, we find the challenged instruction unexceptionable.

f)  Proximate Cause, Use of Word "May"

In the course of the court's instructions, the subject of proximate cause was, of course, covered and indeed two illustrations were used, one applicable to appellant and the other to Dennis Hall. (The court made it clear that no emphasis for or against either driver was intended.) With

respect to Hall, the court stated that if the jury "find[s] Dennis Hall was operating his vehicle at a greater speed than was reasonable and prudent . . . and that such speed was negligence that directly caused the collision," without any contributory negligence on the part of Mrs. Walker, "then you *may* find that excessive speed is a proximate cause of the accident." (Emphasis added.)

As a converse example the court instructed that "if you find that Eleanore Walker proceeded across the northbound [sic] lane of Route 7 at a time when the approaching vehicle of Dennis Hall's was in such proximity that there would be imminent danger of an accident and that Mrs. Walker's act of crossing the northbound [sic] lane . . . was negligence that directly caused the collision . . . and . . . the plaintiff Hall's damages and injuries," without any contributory negligence on his part, "then you *may* find that the making of a turn under those circumstances, is a proximate cause of the accident." (Emphasis added.)

Appellant here contends that the court's instruction "set up all the elements requiring a verdict for appellant, but then contradictory and in effect [sic] told the jury that they had the permission or discretion by the use of the word 'may', to ignore the law."

We observe that the court went on in the instructions to inform the jury that there "may be more than one proximate cause of an accident" and that what had been related to the jury by way of example applied with equal force to the statutory rules of the road previously considered. Specifically, the court pointed out that if the jury should find that one or more of the drivers violated any of the rules of the road and that such violation was a proximate cause of the accident, "then you should answer the issues according to your findings."

In this entire context we find totally without substance appellant's claim of reversible error in the employment by the trial court of the word "may."

g)  Instruction Relating to Damages

Appellant also contends that the court erred in its

instruction relating to punitive damages. In the light of our disposition of appellant's claims relating to liability this assertion of error becomes moot. *See Wolf v. Levitt & Sons, Inc.,* 267 Md. 623, 298 A. 2d 374 (1973); *Green v. Washington Suburban Sanitary Commission,* 259 Md. 206, 269 A. 2d 815 (1970).[12]

## IV *Alleged Improper Allocation of Peremptory Challenges*

Prior to the selection of the jury the trial court conferred with counsel concerning the number of peremptory challenges to be allocated in this multiple party trial. The court grouped the respective interests involved and also made provision for two alternate jurors. As a result, appellant received five peremptory challenges in her capacity as a plaintiff and five as a defendant. The defendants below and the other parties plaintiff in the consolidated actions received a combined total of twenty strikes. It is now contended, objection having been made below, that appellant was denied "due process and equal protection" on the ground that the trial court granted to appellees an unfair advantage in that they received on a combined basis twenty peremptory challenges whereas appellant received ten.[13]

It is, of course, elementary that under the Maryland Rules of Procedure, Rule 543, each party in a civil action may peremptorily strike, without cause, four persons; and that several defendants or several plaintiffs are considered as a

---

12. For the same reason, we find it unnecessary to consider appellant's claim of error in the court's refusal to permit the introduction into evidence of appellant's attorney's fees and costs of litigation and of the insurance policies covering the respective appellees. Even if, however, these claims were involved in our determination of this appeal, we would find them to be without substance.

13. Initially, appellees, Hall, Becker and Walczak, each received four peremptory strikes for a total of twelve; an additional four strikes were allowed to Martin and his passengers as a group. One additional strike was allocated to the aforementioned in connection with the selection of two alternate jurors. This made a total of twenty. Appellant was allocated four as plaintiff and four as a defendant and was also accorded two additional strikes for the alternate jurors. This made a total of ten.

single party. Rule 543 a. 3. Additional peremptory strikes are also allowed under prescribed circumstances. Thus, Rule 543 a. 4. provides:

"Additional Peremptory Strikes — When Allowed.

Whenever it appears that the trial of an action by a jury involves *two or more plaintiffs or two or more defendants having adverse or hostile interests, or involves multiple parties and claims, including third-party claims, whether in a single action or two or more actions consolidated or consolidated for trial,* the court may allow additional peremptory strikes, from additional lists of jurors to be prepared by the clerk, but no party shall be allowed more than four such strikes." (Emphasis added.)

In our judgment, the trial court committed no abuse of discretion in his allocation of the peremptory strikes. It was, as already noted, a consolidated proceeding involving not only appellant's action, in which she was also a defendant pursuant to Hall's counterclaim, but there were also involved the independent actions of Hall, Becker and Walczak, as parties plaintiff, in which appellant and Hall were defendants. Although appellant contends in her brief that "multiple parties with common interests must exercise their peremptory challenges collectively," she fails to recognize the essential nature of this proceeding as a consolidated trial of three separate actions and that the plaintiffs Hall, Becker and Walczak could not be deprived by the fact of consolidation of their entitlement as plaintiffs to four peremptory strikes each. Similarly, we think the court acted properly in regarding Martin and his passengers as a separate group entitled to four strikes. Furthermore, in support of her assertion of unequal treatment, appellant cites no concrete element of prejudice in the jury selection process. Specifically, no record was made by her below with respect to any panel member or members whom she was prevented from striking. Indeed, there is nothing before us to indicate the extent to which the peremptory strikes of any

of the parties were exercised. In this state of the record, appellant's bald assertion that her constitutional rights were violated must be rejected.

## V  *Denial of Motion for New Trial*

One of the grounds asserted by appellant in her motion for new trial was that certain members of the jury had overheard statements at numerous bench conferences. In denying Mrs. Walker's motion, Judge Brannan disclosed that he had personally contacted, by telephone, the twelve panel members and one alternate in an attempt to discover if, in fact, any such conversations were overheard. He expressed complete confidence, as a result of his telephone discussions with the members of the jury, that no juror actually heard any substantive discussion at the bench; and such conferences were not referred to during the jury's deliberations. Appellant contends that the trial judge's action in communicating with the individual jurors was highly improper and constituted grounds for granting a new trial.

We begin with the firmly established rule that the granting or denial of a motion for new trial is a matter within the sound discretion of the trial court. *I.O.A. Leasing Corp. v. Merle Thomas Corp.*, 260 Md. 243, 249, 272 A. 2d 1, 4 (1971). The trial court's decision will not be disturbed on appeal where it appears that the lower court fairly expressed its discretion and in the absence of "the most compelling reasons." *Mack Trucks, Inc. v. Webber*, 29 Md. App. 256, 270, 347 A. 2d 865, 873 (1975). The trial judge's discretion extends to matters concerning juror misconduct or other such irregularity in the conduct of others which may affect the jury. *See Kasten Construction Co. v. Evans*, 260 Md. 536, 548-49, 273 A. 2d 90, 96 (1971); *Safeway Trails, Inc. v. Smith*, 222 Md. 206, 159 A. 2d 823 (1960).

Appellant's motion was bottomed upon the affidavits of Lois W. Baker, appellant's daughter, Michael P. Crocker, appellant's counsel, and the appellant. Each affidavit recited that at various stages of the proceedings, from their

respective positions in the courtroom, these affiants were able to overhear certain "words" and "bits of conversation" emanating from the bench conferences. Additionally, each affiant claimed that from the jurors' expressions and gestures, the affiants were able to conclude that the jury was, in fact, overhearing parts of the bench conferences.

Our review of the record reveals that at various times during transcribed bench conferences, while the jury was present in court, the trial judge or one of the attorneys had occasion to make reference to loudness of voice.[14] However, in each such instance, the trial judge instructed counsel to lower their voices. Also, at the hearing on appellant's new trial motion, Judge Brannan confirmed that at several stages of the proceedings his concern over the proximity of the jury box to the bench prompted him to order the bailiff to take a position close to the jury during bench conferences. He stated that on each occasion the bailiff reported that the discussions at the bench were not audible to the jury.

While we believe the trial judge's actions in telephoning each juror, without notice to or consent of counsel, was inadvisable and, under different circumstances, could very well mandate a new trial, we find no reversible error here. As we have previously indicated, the trial judge was keenly aware of the problems during trial and adopted certain safeguards to prevent the bench conferences from reaching an audible level from the jury box. Most importantly, a fair reading of Judge Brannan's opinion denying the new trial motion discloses that he did not rely upon his personal communications with the jurors in reaching his decision but rather that his telephone interrogations merely confirmed a conclusion already reached. In addition, appellant's affidavits make no showing that any one or more members of the jury heard any particular statement, much less anything that could be deemed prejudicial. In the absence of such a showing and upon the facts and circumstances

---

14. At times, the reference was to the tone of appellant's counsel.

involved, we find no abuse of discretion in the denial of appellant's motion for a new trial. Appellant's reliance upon *Wash., B. & A.R.R. v. Kimmey,* 141 Md. 243, 118 A. 648 (1922) and *Beasley v. State,* 271 Md. 521, 318 A. 2d 501 (1974), is misplaced.

*Judgment affirmed; appellant to pay the costs.*