CHERYL D. FINN, an Infant, by Her Father and Natural Guardian, ARTHUR P. FINN, Respondent, v. ROBERT J. MORGAN et al., Appellants. (Appeal No. 1.)

ARTHUR FINN, Respondent, v. ROBERT J. MORGAN et al., Appellants. (Appeal No. 2.)

SHIRLEY CHILTON, as Administratrix of the Estate of LAURENE CHILTON, Deceased, Respondent, v. ROBERT J. MORGAN, Appellant. (Appeal No. 3.)

CHERYL D. FINN, an Infant, by Her Father and Natural Guardian, ARTHUR P. FINN, Respondent, v. ROBERT J. MORGAN, Defendant, and DAVID S. BARTOSZEWSKI, Appellant. ARTHUR FINN, Respondent, v. ROBERT J. MORGAN, Defendant, and DAVID S. BARTOSZEWSKI, Appellant. (Appeal No. 4.)

Fourth Department, December 12, 1974.

*Mackenzie, Smith, Lewis, Michell & Hughes* (*John F. Lawton* of counsel), for Robert J. Morgan, appellant.

*Rudolph V. Parr* for David S. Bartoszewski, appellant.

*Furtch & Oudemool* (*Theodore F. Furtch* of counsel), for Cheryl D. Finn and another, respondents.

*R. J. and P. R. Shanahan* (*William F. Lynn* of counsel), for Shirley Chilton, respondent.

SIMONS, J. Defendants Bartoszewski and Morgan appeal from judgments in favor of plaintiffs in these negligence actions. The accident occurred when both Bartoszewski and Morgan were driving their automobiles south, the Bartoszewski car ahead of the Morgan car. The northbound automobile of plaintiff's intestate, Laurene Chilton, passed Bartoszewski without contact and collided with the front of the Morgan car. Bartoszewski assigns error in the court's charge with respect to his liability. Defendant Morgan raises an evidentiary question concerning privileged communications between an attorney and client.

The accident occurred at dusk on the evening of July 6, 1968 on the Jordan-Elbridge Road in Onondaga County. Laurene Chilton was alone in her automobile and was killed instantly by the impact. Plaintiff Cheryl Finn was a passenger riding in the front seat of the Morgan automobile. She received serious injuries and her driver, defendant Morgan, was also injured. The accident happened as the Morgan and Bartoszewski vehicles were proceeding down the grade of a hill. After impact the Chilton vehicle came to rest upside down in the ditch on the east side of the road with Miss Chilton inside. The Morgan vehicle came to rest near the Chilton car but off of the west or opposite side of the road. Plaintiff Finn and Morgan were thrown from their car on impact and they were found unconscious in the center of the road. After the accident, Bartoszewski parked his car about 200 feet south of the collision. The physical evidence of the point of impact was equivocal.

Bartoszewski and his passengers, the Swimm cousins, claimed that they passed Morgan before coming over the crest of the hill and proceeded in the southbound lane ahead of him. They testified that the Chilton car came toward them at a high rate of speed, passing another northbound car (apparently defendant McCormick), that Bartoszewski stepped on his brakes and pulled to the right and that the Chilton car returned to its own lane just in time to avoid hitting them. One of the Swimm boys followed the progress of the car as it proceeded north out of control. He testified that looking through the rear window of

the Bartoszewski car he saw the Chilton car collide with Morgan while Chilton was partly over the center line and into the south-bound lane of travel. Morgan also testified that the impact occurred in his lane of travel. Only Cheryl Finn testified the accident happened when Morgan drove to his left and over the center line attempting to pass Bartoszewski's car.

There was bystander testimony that before going over the hill Bartoszewski and Morgan were driving 60 m.p.h. or better, that Bartoszewski had passed Morgan and that both cars continued "bumper to bumper" south over the crest of the hill.

Defendant McCormick testified that he and Miss Chilton had left his home some miles away and were driving north towards Jordan in separate cars but that he had been delayed by a traffic light and the delay prevented him from arriving upon the scene of the accident until after the collision.

The jury returned verdicts of $25,000 in favor of Cheryl Finn and $8,000 in favor of her father in his derivative claim against defendants Morgan and Bartoszewski and a verdict of no cause of action in favor of defendant McCormick in the Finn cases. They also returned a verdict of $20,000 in favor of Shirley Chilton for wrongful death against defendant Morgan. The Finns had previously settled with the Chilton carrier, receiving full payment of $10,000 insurance policy limit, and this was deducted from the Finn verdicts. Defendant Morgan had also received a settlement from the Chilton insurance carrier before the trial.

The claims against Bartoszewski presented questions of negligence and proximate and concurring cause requiring careful instruction of the jury. A verdict against him necessarily rested upon a finding that at the time of the accident, defendants were engaged in a race which caused the accident or upon independent acts of negligence by Bartoszewski causing plaintiffs' damages. The court failed to discuss the applicable law on racing and causation, and although only limited exception was taken to the charge, we determine that the interests of justice require a reversal and retrial.

The arguments of counsel at the trial left no doubt that their contention was that the two defendants were racing immediately before the accident. Section 1182 of the Vehicle and Traffic Law was not charged and the case was submitted on common-law principles of negligence. While the New York courts have had few occasions to consider the subject, the generally accepted rule is that operators of racing automobiles are joint tort-feasors jointly and severally liable for injury to third persons caused

by the race. Thus, if the jury determined that Bartoszewski was participating in a race with Morgan at the time of the accident, he was guilty of negligence causing injury to plaintiffs although his vehicle was not directly involved in the collision, provided that the conduct of Morgan was a contributing cause of the accident. If the two defendants were racing, then each was responsible for the acts of the other because participation in the race was the equivalent of participation in the accident. The race itself was the joint tort and defendant was liable to an injured person notwithstanding the fact that he may not have been chargeable with a distinct act of negligence (*Burnham* v. *Butler,* 31 N. Y. 480; *Saisa* v. *Lilja,* 76 F. 2d 380; *Nelson* v. *Nason,* 343 Mass. 220; 60A C. J. S., Motor Vehicles, § 297; Ann., 13 ALR 3d 431). As long as the race continued, the joint liability continued even though at the time of collision the immediate pressure of competition had temporarily abated and some distance separated the two cars.

Before imposing liability, the jury necessarily had to determine whether defendants were engaged in a race and in such determination it was required to find concerted action between Morgan and Bartoszewski (*De Carvalho* v. *Brunner,* 223 N. Y. 284; 5A Warren's Negligence, ch. 8, § 5.04). Speeding and racing are not concomitant acts, and proof of speeding alone did not prove a race. The gist of racing is competition and the facts must support an inference of some agreement to race. Before the rule applies, there must be some direct evidence from which the jury may find a challenge coupled with a response in speed and relative position indicating acceptance of the challenge (cf. *People* v. *Grund,* 14 N Y 2d 32, recognizing the same duty by statute but establishing a higher standard of proof for criminal conviction). While the proof against Bartoszewski was questionable, it " was for the jury to say, from all the circumstances in the case " whether the actions of the defendants were " done in concert, and if the jury found in the affirmative * * * to hold all the defendants liable " (*De Carvalho* v. *Brunner, supra,* p. 287).

Furthermore, if the claim was that the cars were engaged in a race, there should have been an appropriate charge concerning the conduct of plaintiff, Cheryl Finn, for a passenger in one of the participating cars must establish that the race occurred without her knowledge and acquiescence or that she exercised reasonable care for her own safety after the race began (see generally, Ann. 84 ALR 2d 448). None of these rules were charged to the jury.

Alternatively, if the actions were to be decided without reference to a race (as the court charged and as is now contended in the Finns' brief), then the burden rested upon plaintiffs to establish negligent acts by both Morgan and Bartoszewski which caused the accident. The singular fact that the Bartoszewski car did not come into contact with the Morgan or Chilton vehicles would not prevent recovery from him if the negligent operation of his vehicle caused injury to plaintiffs (*Hagadorn* v. *Socony-Vacuum Oil Co.*, 298 N. Y. 882; *Quelch* v. *Miller*, 261 N. Y. 600; *LaDuke* v. *International Paper Co.*, 258 App. Div. 375), but on the facts there was a critical issue as to whether his actions were a direct, albeit concurring, cause of the accident (see 1 NY PJI 2d 206–211).

The other issue in these appeals requiring discussion relates to the court's refusal to admit certain evidence.

Prior to the institution of the Finn actions, both the Finns and Morgan were represented by the same attorney. While so represented, Miss Finn testified under oath at a motor vehicle hearing. On that occasion she did not claim that the Morgan vehicle was on the east, or wrong side of the road when it collided with the Chilton car. In 1969 the Finn and Morgan cases against Chilton were settled before suit was commenced. Thereafter the Finns obtained new counsel and this action was commenced in 1970. Since the institution of this action Miss Finn has testified that the accident occurred when the Morgan vehicle was partly in the east side of the road, in the northbound travel lane.[1] The crucial importance of this evidence is readily apparent because Cheryl Finn was the only witness to testify that Morgan's vehicle had crossed the center line into the northbound lane before the collision.

Confronted with plaintiff's trial testimony which appeared at variance with her prior description of the accident, Morgan's counsel tried to impeach her by use of prior conflicting statements.[2] First he used Cheryl's testimony at the motor vehicle

[1]. The attorney who represented the Finns and Morgan originally does not appear on these appeals.

[2]. No effort was made by counsel to demonstrate bias by questioning about the Chilton settlement. Formerly the fact and amount of settlement received from a joint tort-feasor was admissible for the purpose of mitigating damages (*Livant* v. *Livant*, 18 A D 2d 383, mot. for lv. to app. dsmd. 13 N Y 2d 894) or to effect credibility (*Mannion* v. *General Baking Co.*, 266 App. Div. 1028; cf. *Keet* v. *Murrin*, 260 N. Y. 586; *Ryan* v. *Dwyer*, 33 A D 2d 878; see, also, Supplementary Practice Commentary to CPLR 4533-b McKinney's Cons. Laws of N. Y. Book 7B, CPLR, Pocket Part, p. 177 [1974]. CPLR 4533-b pro-

hearing. This established the conflict but the disclosure was something less than a bombshell because at the motor vehicle hearing she was asked if she had heard the earlier testimony of the investigating trooper and Morgan (to the effect that Morgan was operating his vehicle in his own lane) (" Yes ") and whether there was anything she wished to add to that testimony (" No ").

Counsel then attempted to question plaintiff and her former attorney about the version of the accident she advanced to effect the settlement with the Chilton carrier. The trial court held the information privileged and refused to permit an offer of proof (CPLR 4503). It is these rulings which defendant questions.

The modern trend is to view litigation as a search for truth rather than a sporting contest. Hopefully recent court decisions demonstrate broad liberality in pretrial and trial procedures in an attempt to accomplish this end. However, application of the confidential communication rule cuts against this principle because it excludes evidence which has a high degree of reliability as contrasted with rules that restrict evidence which is prejudicial or of low probative value. For that reason the privilege rule and the attorney-client privilege particularly, have not been without critics both present and past (see Fisch, New York Evidence, §§ 511, 516, 517; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4503.01) and the courts have generally held that the scope of the privilege must be narrowly construed to restrict its impact (*People ex rel. Vogelstein* v. *Warden of County Jail,* 150 Misc. 714, 720, affd. 242 App. Div. 611). The privilege is justified because of the public policy encouraging full disclosure between a client and his attorney and the need to protect their confidential relationship. Its purpose is not concealment of evidence, and the fact that allegedly confidential information may operate to the client's disadvantage does not operate to extend the privilege to areas where it does not otherwise exist (see *Shafer* v. *Utica Mut. Ins. Co.,* 248 App. Div. 279, 289). Once the relationship is established, the inquiry is whether or not the client's communication was made in confidence. If it was, it is privileged. If it was not, then the client has waived any claim of privilege.

---

vides that such evidence may no longer be received in the hearing of the jury to mitigate damages. Apparently it was the intention of the Judicial Conference that it be precluded for purposes of credibility also (Report of Judicial Conference to Legislature, Feb. 1, 1974).

We may only speculate what the facts were concerning the retainer of the original attorney by the Finns and Morgan, but there are three possible reasons for denying the asserted privilege in this case.

First and quite simply, Morgan may have been present when Cheryl Finn talked to her attorney. In that case either Cheryl, her attorney or Morgan may testify as to what was said (*Baumann* v. *Steingester,* 213 N. Y. 328; *Platt* v. *Bank of New York,* 41 A D 2d 648; *La Barge* v. *La Barge,* 284 App. Div. 996).

Second, Morgan contends that there was no privilege because the Finns did not intend their statements to be confidential but instructed counsel to convey them to the Chilton carrier for purpose of negotiation (see *Hernandez* v. *Brookdale Mills,* 201 App. Div. 325; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 4503.18; see, also, *Matter of Creekmore,* 1 N Y 2d 284, 296).

Third, a *voir dire* may establish that Morgan and Cheryl Finn retained this lawyer to represent them jointly in litigation of mutual benefit to each of them. If they consulted the same attorney on a matter of common interest knowing of his joint representation and of their possible adverse positions, then their conversations even though not made in each other's presence, are admissible in subsequent litigation between the two when they later became adversaries (*Wallace* v. *Wallace,* 216 N. Y. 28, 35–36; [The information is not available in the Chilton action, however, *Root* v. *Wright,* 84 N. Y. 72]).[3]

Indeed, considering the ethical requirements imposed upon this attorney representing both a passenger and a driver in an automobile accident, we may assume that his retainer followed a full disclosure to his clients of the effects of his multiple representation (see Code of Professional Responsibility, Canon 5, EC 5–15, 5–16; DR 5–105 [B] and [C]). With that knowledge before them, the Finns and Morgan could not have intended that their disclosures would be confidential as to each other. It is true that this case, in which the parties have similar claims against a third person, differs from those in which parties employ a common attorney for a real estate, commercial or will matter. In the latter case the mutual interest of the parties exists *vis-à-vis* each other (*Wallace* v. *Wallace, supra*). We

3. In view of the possible introduction of this evidence, inadmissible in the Chilton action, the parties may consider a severance. Paradoxically, if Cheryl Finn is called as a witness in the action of Chilton against these defendants, the provisions of CPLR 4533-b would not apply and presumably her testimony could be impeached by a showing of bias resulting from the fact of the earlier settlement (see n. 2).

think the issue of mutual benefit may have already been resolved by the parties, however. If they decided to cast their lot together and against Chilton in a fact situation implicit with conflicting interests, there is no reason to protect them from the consequences of that choice when their interests later diverge. An account of the accident which was never a secret to Morgan should not remain a secret to the jury.

The relevancy of the proffered testimony was self-evident and the hearing necessarily turned on the existence of the privilege. Counsel's attempt to submit an offer of proof on the matter was limited and we are unable to determine the facts of the original relationship between the parties. Upon a retrial a thorough *voir dire* record should be made, bearing in mind that the Finns have the burden of justifying exclusion of the evidence (cf. *Koump* v. *Smith,* 25 N Y 2d 287, 294; *Bloodgood* v. *Lynch,* 293 N. Y. 308, 314; *Griffiths* v. *Metropolitan St. Ry. Co.,* 171 N. Y. 106, 111–112). Thereafter the court may make a decision on privilege and the admissibility of the statements on the basis of the *voir dire* record.

We have considered the remaining points in the briefs and find them without merit.

The judgments should be reversed on the law and the facts and a new trial granted, without costs.

MARSH, P. J., WITMER, CARDAMONE and MAHONEY, JJ., concur.

Judgments unanimously reversed on the law and facts without costs and a new trial granted.

In Appeal No. 4: Order unanimously reversed on the law and facts, without costs, and motion granted.