**Marilyn R. GORDON, personal Representative of the Estate of Michael Kesler, deceased, Appellant,**

**v.**

**Barry OIDTMAN & Thomas Voss, Respondents.**

**No. WD 35758.**

Missouri Court of Appeals, Western District.

May 7, 1985.

Thomas H. Rose of Rost & Callahan, Jefferson City, for appellant.

P. Pierre Dominique, Jefferson City, for Barry Oidtman.

Richard S. Brownlee, III, of Hendren & Andrae, Jefferson City, for Thomas Voss.

Before TURNAGE, C.J., and MANFORD and LOWENSTEIN, JJ.

MANFORD, Judge.

This is a civil action seeking damages for the alleged negligent operation of a motor vehicle. At the close of appellant's evidence, the trial court directed a verdict for respondent Thomas Voss. The jury re-turned a verdict against appellant and in favor of respondent, Barry Oidtman. The judgment is affirmed in part and in part reversed and remanded.

Four points are presented, which in summary charge that the trial court erred (1) in directing a verdict for respondent Voss, (2) in sustaining an objection to certain testimony of a witness for appellant, (3) in refusing to strike a venireman for cause, and (4) in refusing to permit appellant to comment in closing argument upon alleged false testimony of respondent Oidtman.

In summary, the pertinent facts are as follows:

On January 10, 1981, appellant (herein-after Kesler)[1] drove his automobile out onto Missouri Boulevard in Jefferson City, Missouri. As he proceeded onto the boulevard, heading east, his automobile collided with a vehicle being operated by respondent Oidtman (hereinafter Oidtman). The evidence revealed that previous to the collision, Oidtman and respondent Voss (hereinafter Voss) had been stopped side by side at the intersection of Dix Road and Missouri Boulevard, which was a distance of some 2,500 feet east of where Kesler entered the boulevard. The Oidtman and Voss vehicles proceeded down Missouri Boulevard and the Voss vehicle eventually was driven behind the Oidtman vehicle. The Oidtman vehicle collided with the automobile of Kesler as Kesler pulled out onto the boulevard. The Voss vehicle was not involved in the actual collision.

An expert called by Kesler testified to investigating the scene and from skid marks, placed the speed of the Oidtman vehicle at between 91 and 110 m.p.h. No testimony was given as to the speed of the Voss vehicle. Both Kesler and his passenger testified to seeing two sets of headlights, but neither could identify the Voss vehicle as being one of the two sets of headlights they observed. The record is void of any evidence linking the vehicle of Voss to the collision.

1. Subsequent to trial, Kesler died from causes unrelated to the events herein, and Marilyn Gor-don was substituted as a party. For purposes herein, appellant is referred to as Kesler.

Other facts deemed pertinent and applicable are disclosed in the discussion of appellant's alleged errors infra.

As noted, Kesler, under his point (1), charges that the trial court erred in directing a verdict for Voss at the close of Kesler's evidence.

■■■ Review of this first charged error is controlled by the rule announced in *Beshore v. Gretzinger*, 641 S.W.2d 858, 862 (Mo.App.1982) which states that the challenge to a verdict directed against a plaintiff cannot stand unless the plaintiff's evidence and all legitimate inferences which can be drawn therefrom are so strong as to leave no room for reasonable minds to differ, and the evidence must be considered in a light most favorable to the plaintiff, accepting as true that which is not opposed to physical laws or not entirely unreasonable. Plaintiff is to be accorded all favorable inferences, and all unfavorable inferences are to be rejected. The defendant's evidence is to be rejected except where it aids the plaintiff's case. The plaintiff, however, bears the burden to remove his case from mere conjecture and to establish his case by substantial evidence having probative value or by reasonable inferences which can be drawn from his evidence.

On this appeal, Kesler, of course, argues that his evidence brings his case against Voss within the rule announced in *Beshore*. In support of that assertion, Kesler argues that the evidence revealed the Voss vehicle was side by side with the Oidtman vehicle and that the two vehicles keeping pace with each other establishes that the Voss vehicle was traveling at an excessive rate of speed.

What plaintiff's evidence reveals is as follows: (a) both the Oidtman and Voss vehicles were stopped at the Dix/Missouri Boulevard intersection, (b) the intersection was approximately 0.6 miles east of the point of the collision, (c) that when the light changed to green, the Oidtman and Voss vehicles traveled westerly with the Oidtman vehicle not accelerating away from the Voss vehicle, (d) the two vehicles were side by side some 737 feet east of the point of the collision, (e) that the Oidtman vehicle was traveling between 91–110 m.p.h., and (f) that prior to impact, the Oidtman vehicle swerved to the left which creates the inference that had Oidtman swerved to the right, the impact would have been avoided except and unless the lane to the right of the Oidtman vehicle was occupied by the Voss vehicle.

From the above, Kesler concludes that the Voss vehicle must have been traveling at least 91–110 m.p.h.

The conclusion offered by Kesler does not follow. The evidence revealed the Oidtman/Voss vehicles were at the intersection of Dix and Missouri Boulevard. This was about 2,500 feet from the collision. There is no evidence from Kesler that the Oidtman/Voss vehicles remained side by side beyond the Dix/Missouri Boulevard intersection. Kesler asserts that the evidence reveals the Voss vehicle some 737 feet from the collision. To be more accurate, however, the testimony relied upon by Kesler was: "Q. And what did you see [when you (Kesler)] looked left]? A. There were two sets of headlights down by around the K–Mart entrance."[2]

■■■ What Kesler's evidence reveals is simply his observation of two sets of headlights. This, in light of Kesler's testimony that he (Kesler) did not know if the Voss vehicle was one of the vehicles he saw and that he had no idea how many vehicles or lights were in the vicinity at the time, is not enough to implicate the Voss vehicle.

Kesler's testimony above relative to the Voss vehicle was secured under cross-examination. Kesler asserts that he is not bound by evidence produced by cross-examination of his witnesses and cites *Bauer v. Adams*, 550 S.W.2d 850 (Mo.App.1977) in support of this proposition. *Bauer* rules that a party is not bound by the testimony

---

**2.** By the testimony, the 737-foot distance was referenced by the location of the local K–Mart   store entrance.

of his witnesses if that testimony is contradicted by other evidence of the party.

The rule in *Bauer* is quite sound but finds no application herein. As the record reveals, Kesler offered no other evidence to contradict his own testimony or that of his passenger that neither could identify the Voss vehicle as being upon the roadway at the time of the collision. Thus, Kesler has offered no evidence as to whether the Voss vehicle was in the vicinity.

Kesler's further assertion (evidence that Oidtman's vehicle was traveling 35–40 m.p.h. should not be considered in light of Kesler's expert witness's testimony that the Oidtman vehicle was traveling 91–110 m.p.h.) has no application because the directed verdict was to the favor of Voss and not Oidtman. Kesler's expert testified that from skid marks, the Oidtman vehicle was traveling 91–110 m.p.h. This expert offered no estimate of the Voss vehicle.

■ The mere fact that Oidtman swerved his vehicle to the left as opposed to the right, standing alone, did not establish or serve the basis for inferring that the Voss vehicle was in the other lane or traveling at an excessive rate of speed.

To buttress his argument, Kesler cites two cases for this court. The first is *Gay v. Samples*, 227 Mo.App. 771, 57 S.W.2d 768 (1933). In *Gay*, the evidence revealed that the co-defendants were traveling side by side at a speed of 45–50 m.p.h. for a distance of one-half mile. The evidence further revealed that the defendants' vehicles overtook and passed a team and wagon traveling in the same direction and a collision occurred. The court ruled that it was not necessary to determine whether the defendants were racing within the technical meaning of that term, and the court, from the evidence, determined that the defendants were jointly engaged in the commission of a tort. The evidence in *Gay* further revealed that one defendant knew the vehicle of the co-defendant was driving on the road near his vehicle for about one-half mile and that he was keeping pace with the co-defendant's vehicle. *Gay* is distinguishable from the instant case in

that Kesler's evidence and all reasonable inferences therefrom shows nothing more than the fact that the Oidtman and Voss vehicles were side by side at the Dix/Missouri Boulevard intersection some 2,500 feet east of the point of the collision.

The second case cited by Kesler is from our sister state of Florida. It is *Skroh v. Newby*, 237 So.2d 548 (Fla.App.1970). In *Skroh*, while one of the defendants vehicles was not actually involved in the impact, the evidence did reveal that both defendants started together on a four lane divided highway, maintained a car-length's proximity, and there was no other traffic on the highway. The evidence revealed a speed in excess of 90 m.p.h. and that one of the defendants skidded into the plaintiff. The Florida court ruled that it was proper to allow the jury to decide if the defendants were racing at the time. *Skroh* is distinguishable from the instant case because Kesler's evidence revealed that the Oidtman and Voss vehicles were not the only vehicles upon the road at the time. In addition, Kesler's evidence failed to establish that the Oidtman/Voss vehicles were traveling side by side or that they kept pace with each other for any amount of time or distance.

The trial court did not err in directing a verdict to the favor of respondent Voss and Kesler's point (1) is ruled against him.

Under point (2), Kesler charges that the trial court erred in sustaining defendant's objection to the testimony of one of his witnesses. The facts pertinent to this point are as follows:

One William Sales was the hearing examiner who presided at a hearing regarding a license revocation by the Missouri Department of Revenue arising from this collision. Kesler asserts that testimony by Sales, based upon his recollection of the hearing testimony plus the refreshment of his memory from his notes made at the hearing, would have included certain admissions against interest against Voss. Sales was called as a witness for Kesler and a hearing outside the presence of the jury was

conducted. Sales was asked if Oidtman testified as to where the Voss vehicle was during the time the vehicles traveled along Missouri Boulevard. Sales, over objection, stated, "He (meaning Oidtman) stated that he (meaning Voss) was in a blind spot of his mirror on his right." The trial court ruled the testimony inadmissible.

Kesler asserts that § 303.310, RSMo Supp.1984 does not preclude the Sale's testimony. Section 303.310 provides:

"Neither the report required by section 303.040, the action taken by the director pursuant to this chapter, the findings, if any, of the director upon which such action is based, nor the security filed as provided in this chapter shall be referred to in any way, nor be any evidence of the negligence or due care of either party, at the trial of any action at law to recover damages; however, the report required by section 303.040 may be subpoenaed and may be introduced into the evidence solely for the purpose of establishing the existence or lack of insurance coverage . . ."

While a reading of the foregoing statute appears to preclude the Sales testimony, Kesler contends that his testimony is not precluded because the statute does not specifically exclude it. Kesler cites to *Farmer v. Arnold*, 371 S.W.2d 265 (Mo.1963) in support of his contention. *Farmer* was a case wherein the plaintiff had executed a release to the defendant. The release had to be filed with Missouri's Safety Responsibility Unit. Plaintiff argued that the release, being personal, was also confidential and thus not admissible in evidence. The court ruled that the release was admissible. The court went on to hold that § 303.310, as it related to the case, was self-explanatory and did not, by its terms, refer to a release given pursuant to the act.

Kesler further cites to *Aviation Enterprises, Inc. v. Cline*, 395 S.W.2d 306 (Mo. App.1965). In *Aviation*, the plaintiff (Cline) sought admittance into evidence a photostatic copy of an accident report previously submitted by the defendant to the Civil Aeronautics Administration. The report was ruled inadmissible by the trial court because it was not the best evidence. Cline had sought to use the report as an admission against interest by a party. On review, the appellate court ruled that it was error to exclude the report under the best evidence rule because that rule is not applicable to the report when offered as an admission against interest of a party when that party acknowledged his signature on the report. The court went further and concluded that while not mentioned at trial, the defendant had contended that the report was not admissible because of the provisions of § 1441(e), Title 49, U.S.C.A., which provides:

"(e) No part of any report or reports of the Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports."

The court then further concluded that only evaluations, opinions, and conclusions as to the causes of air crashes are excluded by the statute.

Because of the disposition of this point infra under the particular facts and circumstances of the instant case, it will be observed that neither the *Farmer* case nor the *Aviation* case apply or control. In addition, the instant case does not, because of the particular facts and circumstances, lend itself to an interpretation or construction of § 303.310. Even if this court were to construe the statute (an issue not resolved herein), and that the findings of fact and conclusions from hearings on license revocations were not admissible and correspondingly that testimony from such hearings was admissible (again not a decision reached herein), the testimony herein asserted to be an admission against the interest of a party would still not be admissible.

Kesler asserts that in *Aviation*, the report was admissible as an admission of a party opponent because the report was adopted by that party. Indeed, in *Aviation*, but not herein, the defendant had signed and thus adopted the statement. Kesler asserts that the above-referred-to

statement by Oidtman of what Voss said and which was to be testified to by Sales was an admission against interest of Voss as a party. Voss, on the other hand, asserts that such testimony was an attempt by Kesler to explain the events of the collision by Oidtman through the witness Sales.

In resolving this dispute, it must be determined if the above referenced "statement" falls within either of the two categories applicable to admissions against interests of a party.

■ The first category considered is that so-called hearsay exception of declarations against interest. Under this category, for a statement to be admissible, the declarant must be unavailable due to absence from the court's jurisdiction, supervening incompetency through interest, illness, insanity, or death. *State v. Grant*, 560 S.W.2d 39, 43 (Mo.App.1977). Since the declarant (Voss) was not unavailable, the declaration cannot be admissible as an admission against interest as an exception to the hearsay rule.

■ The other category is an admission by a party opponent. The possibilities in this category include (a) the party's own statement, (b) statements which the declarant manifestly believed or adopted, (c) authorized statements, (d) statements by one in privity, and (e) statements of co-conspirators.

What Kesler attempts to do herein, however, is to use the statement of Oidtman against Voss via the testimony of the former at a previous license revocation hearing through the testimony of the hearing officer, Sales.

■ The admissions of a co-defendant are not admissible against another co-defendant merely because of one's being a co-party to litigation. *Davis v. Sedalia Yellow Cab Co.*, 280 S.W.2d 869 (Mo.App. 1955). Thus, under *Davis*, Oidtman's statements would not be admissible against Voss. There is an exception to this general rule, however, and that is if the statement is an "adoptive admission", it is admissible.

Before considering whether the exception of an "adoptive admission" applies herein, it is noted first that the hearsay exception is not applicable. As regards the admission of a party opponent category, the record shows the statement was that of Oidtman, not Voss [ (a) above]; there is no showing that Voss authorized the statement [ (c) above]; there is nothing to show that Oidtman and Voss were in privity [ (d) above], and there is no showing that Oidtman and Voss were co-conspirators. Thus, if the statement were admissible under any instance, it would have to be found that Voss adopted the statement or manifested a belief in the statement.

■ Again, the general rule is that one may expressly or implicitly adopt the statement of another as his own and such can constitute an admission of a party opponent. *State v. Laws*, 668 S.W.2d 234 (Mo. App.1984). In *Laws*, a classic example of an adoptive admission is illustrated. Statements made in front of the defendant were held to be admissible against him where he did not deny them, and further he added to the conversation various statements concerning the crimes under discussion.

■ There is nothing upon the record herein which even suggests that Voss expressly adopted the statement of Oidtman, thus in order for Oidtman's statements (made at the revocation hearing) to be admissible against Voss, such statements would have to be construed as a tacit admission. In order that a tacit admission be used, the following conditions must be shown to have been met: The statement must have been in the presence and hearing of the party. The statement must be sufficiently direct as would naturally call for a reply. Finally, the statement must not have been made at a judicial proceeding. *State v. Samuel*, 521 S.W.2d 374, 375 (Mo. banc 1975). *See also State v. Mullins*, 101 Mo. 514, 14 S.W. 625, 626 (1890) where this rule was applied to a coroner's inquest. It was held that statements made at the inquest were not admissible in a subsequent trial.

The rationale that statements made at judicial proceedings cannot later be used as tacit admission is that whether a party is attending the proceeding as a party or witness, he is prevented from making open interruption because of the decorum of the proceeding. 4 *Wigmore, Evidence,* § 1072 (1972). In a judicial proceeding, one is not at liberty to interpose and contradict the evidence as he pleases. *Mullins* 14 S.W. at 626. The rationale of the rule and hence the rule itself should be extended to such proceedings herein (the license revocation hearing), because Voss could not have and certainly was not expected to have jumped up or in some other spontaneous method, contradict statements made by Oidtman. It does not follow that merely by remaining silent in the revocation hearing, Voss adopted the statements of Oidtman.

The trial court did not err in excluding the testimony of Sales under the facts and circumstances of the instant case. As noted, this court herein does not rule the question of admissibility under § 303.310 because that issue is not reached in the instant case. Kesler's point (2) is ruled against him.

Kesler's point (3) (and hence his final point as will be observed infra) charges that the trial court erred in refusing to strike a venireman for cause.

It is Kesler's position that one of the veniremen was not qualified under § 494.-190, RSMo 1978. Section 494.190 states that no person who is kin to either party within the fourth degree of consanguinity or affinity shall be sworn as a juror.

The record shows that Kesler challenged venireman Hillen for cause. The following portion of the record discloses what occurred.

"The Court: Do we have any challenges for cause? ...

Mr. Rost (for Kesler): No. 12

The Court: No. 12 is Joseph Hillen.

Mr. Rost: His wife is a second cousin to the Oidtmans.

Mr. Dominique: I don't believe that's—

Mr. Brownlee: That's not relation under the statute.

The Court: He would be by affinity, which is even farther off."

Hillen, on voir dire, stated that his wife is a second cousin of respondent Oidtman's father. Thus, respondent Oidtman is a third cousin to Hillen and is related to Hillen within the fourth degree under cannon law. Cannon law is that which is applied in civil cases. *State v. Thomas,* 351 Mo. 804, 174 S.W.2d 337 (1943).

When a juror discloses or it is determined that a juror is related by blood or marriage to a party within the fourth degree, he is incompetent to serve as a juror under § 494.190, and the court should excuse him. *Kennedy v. Tallent,* 492 S.W.2d 33, 35 (Mo.App.1973).

The fact that Kesler struck Hillen preemptorily does not cure the matter. In determining the question of the propriety of a ruling upon a challenge for cause, it is improper to consider whether the party had struck the venireman preemptorily or whether the party had exhausted his preemptory challenges. *Theobald v. St. Louis Transit Co.,* 191 Mo. 395, 90 S.W. 354, 361 (1905).

Oidtman contends that Kesler failed to make a proper objection and thus prevented the trial court from ruling upon his objection to Hillen sitting as a juror. It is Oidtman's position that the matter is not preserved for review by this court. This court, however, observes the import of § 494.190 to be so basic to the elements of a fair trial that the question is reviewable for plain error under Rule 84.13(c). This court concludes the trial court did commit error in refusing to strike venireman Hillen for cause.

Kesler's point (3) is sustained to his favor.

Under his point (4), Kesler charges that the trial court erred in refusing him permission to comment, in closing argument, upon the false testimony of Oidtman.

Due to the disposition of point (3), which directs a reversal and remand of this cause as regards respondent, Oidtman's point (4) need not be reached nor ruled. It is hoped that if this matter is again tried, the issues alleged in Kesler's point (4) will be avoided.

The judgment herein, as the judgment relates to the directed verdict to the favor of respondent Voss, is in all respects affirmed. The judgment, as the judgment relates to respondent Oidtman, is reversed and the cause is remanded.

All concur.