**Claude R. SOTO, et al., Respondents,**

v.

**MIDSTATES MILLWORK,
INC., Appellant.**

**No. WD 42136.**

Missouri Court of Appeals,
Western District.

April 3, 1990.

Richard E. Rose, Kansas City, for appellant.

David C. McConnell, Kansas City, for respondents.

Before GAITAN, P.J., and CLARK and MANFORD, JJ.

GAITAN, Presiding Judge.

Claude R. Soto and Wilma G. Soto, plaintiffs/respondents, brought suit against defendant/appellant, Midstates Millwork, Inc., for damages alleged as a result of the breach of a contract to deliver building materials to respondents. Judgment was entered in favor of plaintiffs/respondents. We reverse and remand.

This case arises out of a contract for the sale and delivery of windows and a door frame unit by appellant to respondents. Building their own home, the respondents acted as their own general contractor. In April of 1988, respondents requested and received a computer printout, dated April 11, 1988 (plaintiffs' Exhibit # 1) listing approximately twenty-five (25) window units and a door frame unit that were to be used in the construction of their house. Later on July 18, 1988, appellant gave respondents another computer printout listing windows and a door frame unit (defendant's Exhibit # 3) which was similar in form to Exhibit # 1, but executed by respondent, Wilma Soto. Respondents signed this computer printout and gave appellant a check for one half (½) of the total price listed thereon. Appellant then ordered the items listed on defendant's Exhibit # 3 from its suppliers. According to appellant, those items were delivered to the

respondents. However, respondents assert that delivery was incomplete, that they needed several window units to finish their house, and that the door unit provided was not satisfactory. Unable to resolve this issue, respondents filed a breach of contract action against appellant seeking actual and punitive damages. Respondents asserted at trial that the April estimate sheet (plaintiffs' Exhibit # 1) was in fact the contract, and that appellant did not fulfill its terms.

At trial, respondents testified that they did not have the correct windows to complete the job and that the door frame they ordered proved unsatisfactory. Appellant's evidence was that it had delivered to respondents all items ordered by respondents.

The case was tried without a jury. The judge found for the respondents in the amount of $1,100 for damages for breach of contract and $500 for attorney's fees.

### I.

The standard of appellate review of this case is defined by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976) and Rule 73.01. Accordingly, appellant must establish that there is no substantial evidence to support the trial court's judgment in favor of respondents or that the judgment was against the weight of the evidence.

■ Respondents, in Count I of their petition, allege that on or about July 19, 1988 (sic), they contracted with appellant for the purchase of building materials, and that appellant failed to deliver all the materials contracted for. This position was reinforced at trial when Claude Soto admitted that defendant's Exhibit # 3 was the agreement between the parties and that his wife, Wilma, signed that agreement. This testimony confirmed the obvious. Plaintiffs' Exhibit # 1 was an estimate which could have been converted to a contract had respondents executed it. However, they did not. Instead, the July 18 estimate was executed and became the contract between these parties.

The contract, defendant's Exhibit # 3, was offered and received into evidence without objection. The contract contained the following language:

Please allow sufficient vendor lead time for special or some stock items in the above estimate. Some items may require prepayment. *Quantities listed are not guaranteed to complete job. All special and some stock items cannot be cancelled or returned, check with your salesperson.* Additional material may be required, check quantities and description. If above estimate is acceptable as an order for those items listed, please sign below.

[Emphasis added.]

When asked by appellant's attorney on cross-examination, "Can you point out on Defendant's Exhibit # 3 what items that you paid for that you did not receive?" Mr. Soto answered "I can't do that. Not at this point, NO." Respondents only other witness, Mr. Bruce, the job overseer, could not find one item on the contract that had not been delivered by appellant to the job site.

Respondents' basic complaint is that they came up short in the materials they needed and that the door frame they did receive was not what they wanted. By the terms of the contract, appellant did not guarantee that the items ordered by respondents would complete the job or that they would like them. Respondents bear the burden to prove their case and to establish their case by substantial evidence or by reasonable inferences which can be drawn from that evidence. *Gordon v. Oidtman,* 692 S.W.2d 349, 352 (Mo.App.1985). Respondents failed to meet that burden.

In the case of *In re the Estate of William M. Thomas,* 729 S.W.2d 42, 43 (Mo. App.1987), the court stated "where most of the oral evidence is undisputed and much of the evidence in toto is documentary, then the trial court is not allowed as wide a deference in its finding as in cases involving disputed oral testimony." Referring again to the only relevant documentary evidence, the signed contract of the parties, there was no dispute that the document

was the true agreement of the parties, and there was no evidence that appellant failed to deliver all items on that agreement to respondents. *See also Brusca v. Gallup,* 429 S.W.2d 780 (Mo.App.1968). Hence, respondents failed to establish a breach of contract.

■ Additionally, here, respondents produced no evidence to prove what specific amounts respondents paid for the individual windows that allegedly were not delivered. Thus, there was no way to establish the amount of damages, if any, respondent would be entitled to.

In order to prove damages, the respondents have the burden of proving the difference between the contractual price paid for the goods and the purchase price of the replacement goods or "cover." *Apex. Mining Co. v. Chicago Copper & Chemical Co.,* 306 F.2d 725, 729 (8th Cir.1962). Respondents never produced any evidence, whatsoever, as to what they paid for the individual items that allegedly were not delivered. Respondent, Claude Soto, testified that he paid the total contractual price of $7,780, but never testified or offered any evidence as to what he paid for any of the individual items he did not receive. Respondent did testify that he was asking for $1,550 and that this was based upon what he thought their actual out-of-pocket loss was as a result of the shortages with Mid-states, but there was no evidence as to how he arrived at that figure.

Respondents' only other witness, Mr. Bruce when questioned on the issue of damages stated as follows:

\* \* \* \* \* \*

Q. All right. What more money did it cost over what you had bargained with Mid–West (sic) for to go to Pella?

A. $650, I believe.

Q. All right. So you had to pay $650 more to Pella than you would have paid to Mid–West (sic) for the same thing as anticipated when you made the deal with Mid–West (sic).

A. Well, I wouldn't say more, no.

Q. Well, explain that then.

\* \* \* \* \* \*

Q. Explain what you mean by not—

A. Well, we had to order a window to fill the hole.

Q. All right. So $600 got—

A. Well, that's for the—That's for the window at the fireplace and the window that's in the kitchen, $650.

Q. All right. And then what about this bedroom thing that didn't arrive, the double window, what did you do about that?

A. Well, I don't recall that.

Q. All right.

A. I don't—I don't know how that was handled. Mr. Pierson handled that.

Q. All right. And as to the front door, what did you finally do with respect to this door and the sticks of wood that our clients testified are still in the garage?

A. We bought—We bought the whole assembly from Earthwood.

Q. And how much did that cost?

A. I think $450 for the side lights and the doors.

Q. All right. And was that finally delivered?

A. By Earthwood.

Q. All right. And—And then did you install that?

A. Yes, sir.

There was no evidence as to what these charges were related to other than Mr. Bruce's vague recollection.

It appears that the trial court arrived at the $1,100 figure for the judgment by adding the figures of $650 for some windows and $450 for a door. The problem is, that no evidence existed to show that respondents ever ordered these specific items from appellant. There was absolutely no evidence regarding the contract price of those items which allegedly the plaintiff did not deliver. Therefore, the damage award was clearly unsubstantiated and could not have been reasonably determined because of the lack of evidence. It is overturned. *Iota Management Corp. v. Blvd.*

*Investment Co.*, 731 S.W.2d 399, 418 (Mo. App.1987).

## II.

■ As to the court's award of $500 for attorney's fees to respondents, there is no basis for this award. The action respondents pleaded and tried was an action for breach of contract. There was no provision in the contract for an award of attorney's fees to either party as a result of any breach of the contract. Attorney's fees are not recoverable in a breach of contract action. *Williams v. Gulf Coast Collection Agency Co.*, 493 S.W.2d 367, 370 (Mo.App. 1973). Respondents alleged no other basis for the award of the attorney's fees. Hence, that award is reversed.

We reverse and remand to the trial court with instructions to enter judgment in favor of appellant.

All concur.