Charles O'BRIEN, et al., Appellants,

v.

Ronald W. MANSFIELD and Denise L. Kaiser, Respondents.

No. WD 51620.

Missouri Court of Appeals, Western District.

Jan. 28, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 4, 1997.

Application to Transfer Denied April 29, 1997.

 

Harold A. Walther, Columbia, for Appellants.

Peggy D. Richardson, Andereck, Evans, Milne, Peace & Baumhoer, Jefferson City, for respondent Manfield.

Ann P. Hagan, Mexico, for respondent Kaiser.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Ronald Mansfield's truck sideswiped a car driven by Charles O'Brien when Mr. Mansfield drove over the center line of a two-lane highway, seriously injuring Mr. O'Brien and his daughter Stephanie. At the time of the accident, Denise Kaiser was driving in front of Mr. Mansfield in another vehicle. The O'Briens sued both Mr. Mansfield and Ms. Kaiser, asserting that they were racing and that they could thus be held jointly liable for the O'Briens' injuries even though Ms. Kaiser was not involved in the accident itself. The trial court granted Ms. Kaiser's motion for summary judgment, holding that only speculation and conjecture supported the claim that Ms. Kaiser and Mr. Mansfield were racing. The O'Briens appeal. We affirm for the reasons stated by the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 11:15 p.m. on the evening of July 6, 1990, Mr. O'Brien and his daughter Stephanie were traveling southbound on a two-lane stretch of Route B north of Columbia, Missouri when a pick-up truck driven by Ronald Mansfield swerved into their lane and crashed into the left front of their car, seriously injuring them.

Mr. Mansfield and his girlfriend Ms. Kaiser had just left Columbia, where Mr. Mansfield was checking into having a scratch repaired on his truck. Mr. Mansfield's truck was a customized 1964 Chevrolet truck. Mr. Mansfield had restored the truck by adding "wheely bars" and a special paint scheme that included flames running along its sides. Mr. Mansfield had displayed the truck in several auto shows.

Before leaving Columbia, Mr. Mansfield had stopped for gas. Then he and Ms. Kaiser each began to drive their own vehicles north on Route B out of Columbia toward Mr. Mansfield's home in Centralia, Missouri. Apparently evidence was presented below, but not included in the record on appeal, that Ms. Kaiser's car left the gas station in front of Mr. Mansfield's truck.

It is known that at this point on Route B there are four-lanes and traffic signals to control the substantial traffic. Outside Columbia, the road eventually narrows to two lanes of traffic. The record is also clear that by the time the two vehicles were within a mile of the two-lane portion of the road where the accident later occurred, Mr. Mansfield's truck was in the lead. Thus, if Ms. Kaiser had left the gas station first, Mr. Mansfield must have moved ahead of her either in the traffic in the city, or later after the road became two lanes. Neither Mr. Mansfield nor Ms. Kaiser recalls if or when this occurred, and no other witnesses on this issue have been identified. It is known, however, that Ms. Kaiser passed Mr. Mansfield about one mile before the accident, and thereafter remained in her lane. Her car and that of the O'Briens went by each other, each in their proper lane, without incident. Ms. Kaiser learned of the collision only because she looked back and saw it in her rearview mirror.

Mr. O'Brien and his daughter Stephanie alleged that Mr. Mansfield negligently caused the accident by being on the wrong side of the road, by failing to keep a careful lookout, and by racing. They alleged that Ms. Kaiser negligently contributed to cause the accident by racing with Mr. Mansfield and by failing to keep a careful lookout. Mr. O'Brien also sought recovery from Safeco, his automobile insurer, under the underinsured motorist provisions of his policy. Mr. O'Brien's wife, Clara O'Brien, joined the suit by bringing a consortium action against both Mr. Mansfield and Ms. Kaiser.

Mr. and Mrs. O'Brien settled their claims against Mr. Mansfield and Safeco, but not their claims against Ms. Kaiser. Their daughter, Stephanie, has not settled her claims against either Mr. Mansfield or Ms. Kaiser. Ms. Kaiser filed a motion for summary judgment in which she alleged that she should be granted summary judgment on all of the O'Briens' claims against her because they have failed to present evidence that she was racing with Mr. Mansfield at the time of the crash and thus have failed to show a basis for holding her jointly liable for their injuries.

Most of the evidence relied on by the O'Briens comes from the testimony of Stephanie O'Brien and Ms. Kaiser, as the injuries to both Mr. O'Brien and Mr. Mansfield have prevented them from recalling any details of the accident. Stephanie stated that prior to the accident she and her father had seen the lights of Mr. Mansfield's truck swerving back and forth between the northbound passing lane and the driving lane, and that they commented to each other about this erratic driving. As her father's car and Mr. Mansfield's truck drew closer together, Stephanie said she noticed Ms. Kaiser's car for the first time.

Stephanie made contradictory statements as to the location of Ms. Kaiser's car. At one point she said that Ms. Kaiser was behind Mr. Mansfield at the time of the accident. Later she said that when she first saw Ms. Kaiser's car it was behind Mr. Mansfield's truck, but that Ms. Kaiser pulled up even with Mr. Mansfield for a "very short period of time" and then passed him on the right while Mr. Mansfield was in the passing lane. Stephanie said that Ms. Kaiser's car remained in its own lane throughout.

Stephanie said that she did not know how fast Ms. Kaiser was traveling, but that she estimated that Mr. Mansfield was travelling between eighty and ninety miles per hour at the time of the accident. She also specifically testified that she did not get the impression that Ms. Kaiser and Mr. Mansfield were racing.

Ms. Kaiser absolutely denied racing with Mr. Mansfield. She testified at her deposition that she had passed Mr. Mansfield only once, using the passing lane to do so, and that this occurred approximately one mile before the accident took place. She said that she thereafter remained in her own lane.

She denied speeding, but she also indicated she was going between 55 and 60 miles per hour, which would constitute speeding.

The trial court took Ms. Kaiser's motion under advisement but allowed the O'Briens to present expert testimony to support their claims against Ms. Kaiser. The O'Briens' expert did later offer an opinion that Ms. Kaiser was speeding, but he specifically declined to offer an opinion as to whether she and Mr. Mansfield had been racing. Following review of this expert testimony, the trial court found that any inference of racing would be based on speculation, and entered summary judgment for Ms. Kaiser. The trial judge certified this ruling as final for purposes of appeal.

## II. STANDARD OF REVIEW

Under Rule 74.04, the purpose of summary judgment is to permit the trial court to enter judgment without delay in cases when there is no genuine factual dispute and the movant is entitled to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo.1993); *Becker v. Setien*, 904 S.W.2d 338, 343 (Mo.App.1995). A genuine factual dispute exists when the record contains competent evidence of two plausible, but contradictory accounts of the essential facts. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

Defendants may show they are entitled to summary judgment by either: (1) negating an essential element of the plaintiff's claim; (2) establishing all the elements of an affirmative defense; or (3) showing that after an adequate period of discovery the plaintiff has not produced, and will not be able to produce, evidence sufficient to allow the trier of fact to find any one of the elements of the claim. *Id.* at 381. Once the movant has made the required showing that no genuine issue of material fact exists, the burden shifts to the non-movant to show that there is a genuine dispute as to the material facts supporting the movant's right to summary judgment. *Id.* at 381–82. A genuine issue exists

if there is a dispute that is real, not merely argumentative, imaginary, or frivolous. *Id.* at 382. Mere speculation and conjecture are not enough to create a genuine issue. *Id.* at 378; *Beyerbach v. Girardeau Contractors, Inc.*, 868 S.W.2d 163, 165 (Mo.App.1994); *Wood & Huston Bank v. Malan*, 815 S.W.2d 454, 457 (Mo.App.1991).

Our review of the decision to grant summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382. We view the record in the light most favorable to the non-moving party and the non-moving party is entitled to all reasonable inferences from the record, taking as true all facts not contradicted by the movant. *Id.*

## III. THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE O'BRIEN'S CLAIM THAT MS. KAISER AND MR. MANSFIELD WERE RACING

█ The parties recognize that in Missouri and elsewhere persons participating in a race on a public highway may be held jointly liable for injuries caused during the pendency of the race by one of the race participants.[1] Missouri will impose such liability even in the absence of an express agreement to race and even where the activity of the defendants would fall outside the technical definition of "racing" so long as the plaintiff shows that the tortfeasor and the defendant were "jointly engaged in committing a tort ... [by using the highway] in a manner not consistent with its use by others." *Gay v. Samples*, 227 Mo.App. 771, 773, 57 S.W.2d 768, 769 (1933).

The O'Briens argue that they satisfied this standard by presenting evidence that Ms. Kaiser and Mr. Mansfield were both speeding toward a common destination at the time of the accident, that they passed each other back and forth, and that they traveled next to each other for a very short time, and that

1. *See, e.g., Santillan v. Pettit*, 871 S.W.2d 77 (Mo.App.1994); 60A C.J.S. *Motor Vehicles* § 297 (1969); 6 Blashfield Automobile Law and Practice 3d § 257.2 (1966); Annotation, *Liability of Participant in Unauthorized Highway Race for Injury to Third Person Directly Caused by Other Racer*, 13 A.L.R.3d 431 (1967).

this allows an inference of racing or related joint tortious conduct.[2]

We agree with the O'Briens that they presented evidence from which a jury could find that Ms. Kaiser and Mr. Mansfield were traveling toward a common destination and that both were speeding.[3] Numerous cases have held, however, that the mere combination of excessive speed and a common destination is not itself sufficient to support an inference of racing. A leading case on this issue, and one cited by this Court in *Santillan v. Pettit*, 871 S.W.2d 77 (Mo.App. 1994), is *Finn v. Morgan*, 46 A.D.2d 229, 362 N.Y.S.2d 292, 297–98 (1974). It stated:

> *Speeding and racing are not concomitant acts, and proof of speeding alone did not prove a race. The gist of racing is competition and the facts must support an inference of some agreement to race.* Before the rule applies, there must be some direct evidence from which the jury may find a challenge coupled with a response in speed and relative position indicating acceptance of the challenge.

*Finn*, 362 N.Y.S.2d at 297–98 (quoting *De Carvalho v. Brunner*, 223 N.Y. 284, 119 N.E. 563) (emphasis added).

In other words, people frequently drive to common destinations and exceed the speed limit; that does not necessarily mean that they should be jointly liable for each other's negligence. Before joint liability can be imposed, a plaintiff must present evidence of concerted action, such as an agreement to race, in addition to proof of speed and a common destination. In the absence of an explicit or implicit agreement to engage in joint tortious conduct, the person not involved in the accident cannot be held liable for the other's misconduct.

This point was well made in *Haddock v. Stewart*, 232 Md. 139, 192 A.2d 105 (1963). In that case Mr. Hill lost control of his vehicle and hit two other cars, killing himself and another motorist and seriously injuring a third driver. Suit was filed against Mr. Stewart, even though his car was not involved in the accident, based on the allegation that he was racing with Mr. Hill at the time of the accident. Mr. Stewart admitted speeding and passing various cars while driving. He also acknowledged that Mr. Hill had appeared to challenge him to a race on four separate occasions before the accident. Mr. Stewart testified, however, that each time he was challenged to speed up and race he had ignored the challenge and remained at his desired speed, slightly above the speed limit.

The Maryland Court of Appeals held that this evidence and reasonable inferences from it did not rise above "surmise and conjecture" as to whether there was a race. *Haddock*, 192 A.2d at 108. In so holding, it adopted the reasoning of the trial court that:

> There is nothing to indicate that [Mr. Stewart] encouraged Mr. Hill to race.... All you have really is some evidence of excessive speed or speed greater than the speed limit on the part of Mr. Stewart at certain points along the highway. I notice reference was constantly made to the fact that there was no occasion unless Mr. Stewart was engaged in racing for him to pass the other cars. Of course that, to me, is sort of a non sequitur.... Go out on the highway, any time you want, you see cars speeding up and going sixty to pass

---

**2.** Plaintiffs also cite to evidence that Mr. Mansfield pleaded guilty to an assault charge stemming from the accident and that Mr. Mansfield's truck was specially equipped with "wheely bars" that prevented it from flipping backwards on sudden acceleration. While this evidence might be relevant to a determination whether Mr. Mansfield was driving negligently or wanted to race, we fail to see how it implicates Ms. Kaiser in racing.

**3.** Ms. Kaiser argues that the evidence of speeding came from 10-year-old Stephanie O'Brien's statement that she believed that Mr. Mansfield was going 80 or 90 miles per hour when he hit their car, and that Ms. Kaiser was driving even with him and then passed him, and from an expert's testimony that, in light of Stephanie's estimates, he believed that Ms. Kaiser was traveling at 65 to 70 miles per hour. Ms. Kaiser argues that no foundation was laid to show that Stephanie had the ability to estimate automobile speed, and that the expert could not reasonably rely on Stephanie's guesstimate of speed. We need not decide these issues, as Ms. Kaiser herself admitted she was traveling at 55 to 60 miles per hour on a road which had a speed limit of 55 miles per hour. This evidence alone would support an inference of speeding.

other cars; they're not necessarily engaging in a race. . . .

*Id. See also Walker v. Hall,* 34 Md.App. 571, 369 A.2d 105 (1977) (evidence that two teenage friends were speeding on their way to a common destination was insufficient to survive a motion for directed verdict). Courts in many other jurisdictions have also uniformly required some evidence of concerted action, beyond mere proof of speed or a common destination, in order to impose joint liability.[4]

The O'Briens argue that they have provided the required proof of some evidence of concerted action by showing that Ms. Kaiser and Mr. Mansfield repeatedly passed one another. In support, they note that they presented evidence that Ms. Kaiser pulled out of the gas station before Mr. Mansfield when they left Columbia. Assuming this can be proved at trial,[5] we agree with the O'Briens that, inasmuch as Ms. Kaiser admits that she passed Mr. Mansfield a mile before the accident, then it is a fair inference that he must at some earlier point have passed her.

No inference of racing on the part of Ms. Kaiser arises from these facts, however. First, it is unclear whether the jury would have a basis to determine that Mr. Mansfield ever sped up to pass Ms. Kaiser. Neither of them recalls who left the gas station first, and no witnesses to their journey have been found. The evidence does show, however, that the road on which they were traveling was four-lanes wide, with traffic and stoplights, for some period after they entered it.

It cannot be determined from this evidence whether Mr. Mansfield just happened to pass Ms. Kaiser while the road was four lanes wide, or whether he passed her by crossing the yellow line after the road had narrowed to two lanes.

Even assuming that Mr. Mansfield passed Ms. Kaiser once the road became two-lane, the mere fact that he did so and that she later passed him does not, in the absence of other instances of passing and in the absence of other evidence of reckless driving, provide a basis for a jury to conclude that Ms. Kaiser was racing. As the Maryland Court of Appeals noted in *Haddock* when rejecting the similar argument that the fact that a driver has passed other cars supports an inference that the driver was racing: " 'to me, [that argument] is sort of a non sequitur. . . . Go out on the highway, any time you want, you see cars speeding up and going sixty to pass other cars; they're not necessarily engaging in a race.' " 192 A.2d at 108 (quoting the trial court judge).

The O'Briens suggest that racing can also be inferred from their evidence that after Ms. Kaiser passed Mr. Mansfield, Stephanie saw them speeding next to each other. They say that this supports the view that they were racing. Further, based on Stephanie's testimony, they argue that Ms. Kaiser drove dangerously by then "passing" Mr. Mansfield on the right.

In *Gay,* the Kansas City Court of Appeals ruled that an inference of racing can arise from the fact that two cars are traveling side-by-side down the highway for a signifi-

---

4. *See, e.g., Bellamy v. Edwards,* 181 Ga.App. 887, 354 S.E.2d 434, 437 (1987) (imposing joint liability because two drivers were engaged in a "common enterprise"); *Orszulak v. Bujnevicie,* 355 Mass. 157, 243 N.E.2d 897, 898 (1969) (allowing a jury to infer that the conduct of two drivers amounted to a "challenge and response"); *Finn,* 362 N.Y.S.2d at 297–98 (requiring the facts to support an inference of an agreement to race); *Ogle v. Avina,* 33 Wis.2d 125, 146 N.W.2d 422, 427 (1966) (finding "a situation of mutual stimulation"). *See also Reed v. General Motors Corp.,* 773 F.2d 660, 665–66 (5th Cir.1985) (finding sufficient record evidence to support the conclusion that a driver who led another to drive at excessive speeds and on the shoulder of the road was negligent because he knew the other driver was following his course of conduct and because

he "encouraged and assisted" the other driver's negligence).

5. While Ms. Kaiser testified at her deposition that she is not able to recall who left the gas station first or when or if Mr. Mansfield's car may have moved in front of her, the O'Briens state in their brief that they presented the trial court with the affidavit of an investigator who claimed that Ms. Kaiser had told him she had left the gas station first. Ms. Kaiser denies having made any such admission, and no such affidavit is contained in the record filed in this Court. As the existence of the affidavit is not dispositive, however, we will assume for the purposes of this appeal that it was introduced below and that the investigator would so testify at trial.

cant period of time. The court held that the trial court had properly denied a driver's motion for directed verdict on the issue of racing where the evidence showed the two cars were being driven "practically side by side at a speed of forty-five to fifty miles an hour for a distance of about one-half mile...." 227 Mo.App. at 772, 57 S.W.2d at 768.[6] This, the court said, constituted adequate evidence of joint tortious conduct to get to the jury. *Accord Landers v. French's Ice Cream Co.*, 98 Ga.App. 317, 106 S.E.2d 325 (1958) (allowing a racing claim against a driver not directly involved in an accident where it was alleged that the drivers raced side-by-side down a city street for at least 500 feet before the accident); *Burrington v. Heine*, 88 S.D. 65, 215 N.W.2d 119 (1974) (finding sufficient evidence of racing to submit the case to the jury where eyewitness testimony placed the alleged racers side-by-side on the highway for more than a quarter mile at speeds reaching 75 to 80 miles per hour).

Unlike in *Gay*, however, here we do not have evidence that Mr. Mansfield and Ms. Kaiser traveled side-by-side for some significant period of time. Rather, Stephanie testified that she saw them side-byside only for a very short time. Of course, if one car is to pass another, it must be side-by-side with the other car for a very short time. It is too great a logical leap to conclude that two drivers are racing from the fact that they are briefly traveling side-by-side while passing at a high rate of speed. As Stephanie herself noted, she did not get the impression from watching them that the two cars were racing. What she saw was simply evidence that Mr. Mansfield was attempting to pass, not that the two cars were racing side-by-side.[7]

More applicable to this case is *Gordon v. Oidtman*, 692 S.W.2d 349 (Mo.App.1985). In *Gordon*, the plaintiff brought a negligence action against the driver who collided with him and against a second driver who was not directly involved in an accident, alleging that the second driver's negligent driving contributed to the accident.[8] In support, he offered evidence that: (1) the defendants' vehicles were stopped next to each other at an intersection .6 miles from the accident; (2) he saw headlights side-by-side approximately 737 feet from the intersection; and (3) the first defendant's vehicle was traveling between 91 and 110 mph and swerved to the left prior to impact. He argued that this evidence supported an inference that the collision would have been avoided unless the lane to the right of the first defendant's vehicles was occupied by the second defendant's vehicle, and that the second defendant thus negligently prevented the first one from getting back into the proper lane of travel.

We affirmed a directed verdict in favor of the second defendant on the basis that the plaintiff's evidence and all reasonable inferences therefrom did not establish anything more than that the defendants' vehicles were side-by-side at an intersection some 2,500

---

**6.** In reaching its conclusion, the court specifically avoided deciding whether the drivers were racing. *Gay*, 227 Mo.App. at 774, 57 S.W.2d at 769. Instead, it based its decision on the joint negligent conduct of the drivers and ruled that, as joint tortfeasors, they were liable for the natural and probable consequences of their acts. *Id.*

**7.** We disagree with the O'Briens that Ms. Kaiser can be accused of passing on the right merely because Stephanie says that after Mr. Mansfield's lights moved back and forth he went into the left lane and Ms. Kaiser fell behind him before moving ahead of him. She was at all times in her own lane. He was attempting to pass, but did not do so successfully. There is no evidence she was attempting to pass him.

The O'Briens do suggest in their brief that Ms. Kaiser may have contributed to the accident by passing on the right because this may have prevented Mr. Mansfield from getting back into the proper lane to avoid crashing into the O'Briens'

car. This argument is not in the Point Relied On and is not preserved. In any event, we note that it is uncontested that Ms. Kaiser was in front of Mr. Mansfield, not next to him, at the time of the accident, and further that Mr. Mansfield did not even attempt to swerve to avoid the accident. On these facts we cannot infer that her presence to his right contributed to the accident. *Cf. Gordon v. Oidtman*, 692 S.W.2d 349, 353 (Mo. App.1985) (fact that the first defendant's vehicle swerved to the left before impact could not serve as the basis for inferring that the second defendant's vehicle was blocking the right lane or was traveling at excessive speed).

**8.** Although the facts of *Gordon* suggest that the defendants may have been drag racing shortly before the accident, it does not appear from the opinion that the plaintiff argued that they were jointly liable because they were racing.

feet from the collision. We noted that the evidence failed to show that the defendants' vehicles were traveling side-by-side thereafter or that they kept pace with each other for any significant amount of time or distance after the intersection. *Id.* at 353.

Here, as in *Gordon* and unlike in *Gay,* there is no evidence of any significant side-by-side driving at unsafe speeds. From the evidence, a jury could find that Ms. Kaiser was speeding, and it could find that Mr. Mansfield was speeding and driving dangerously, or even that he desired to race. But it could do no more than speculate that Ms. Kaiser had agreed, either explicitly or implicitly, to accept a challenge by Mr. Mansfield to race down Route B, or to otherwise engage in a common tortious enterprise or concerted action. Speculation cannot serve as the basis for a jury verdict, and an inference based on speculation does not create a genuine issue of material fact sufficient to preclude entry of summary judgment. *See Wood & Huston Bank,* 815 S.W.2d at 457; *Wills v. Berberich's Delivery Co.,* 345 Mo. 616, 134 S.W.2d 125, 129–30 (1939) (case cannot be built on speculation and conjecture or the piling of inference upon inference). Summary judgment is avoided only where there is a genuine issue of material fact.

No genuine issue of material fact exists here on the issue of racing. Accordingly, we affirm the trial court's grant of summary judgment to Ms. Kaiser on the claims against her.

All concur.

